UNITED STATES of America, Plaintiff–Appellee,

v.

Maximus AGUWA, Defendant–Appellant.

No. 96–1182.

United States Court of Appeals, Sixth Circuit.

Argued July 31, 1997.

Decided Aug. 26, 1997.

---

Patricia G. Blake (briefed), Jennifer J. Peregord (argued), Office of the U.S. Attorney, Detroit, MI, for Plaintiff–Appellee.

John F. Royal (argued and briefed) Detroit, MI, for Defendant–Appellant.

Before: MERRITT, WELLFORD, and BOGGS, Circuit Judges.

WELLFORD, Circuit Judge.

Defendant Maximus Aguwa was convicted by a jury of distributing heroin. He now challenges that conviction, alleging that a number of errors occurred during trial. He also contests the calculation of his sentence. For the following reasons, however, we AFFIRM.

## I. *FACTS*

On October 11, 1994, a team of Drug Enforcement Administration (DEA) agents met with a confidential informant who had arranged to make a controlled purchase of an ounce of heroin at a local restaurant. The suspect, however, never appeared. While waiting, though, the informant recognized another individual, an unidentified male referred to as "Tiger" because he was dressed in Detroit Tigers' baseball apparel. Tiger motioned for the informant to join him at a pay phone and then indicated a desire to fill

the breach and help secure the amount of heroin that she was seeking. Tiger made several phone calls, and shortly thereafter, the defendant arrived driving a BMW and supplied the informant with an ounce of a substance that was later determined to contain 32% pure heroin.

The defendant was not immediately confronted or arrested, but was subsequently identified on the basis of the BMW's registration and some photos obtained from the Immigration and Naturalization Service. After testing of the heroin had been completed, a criminal complaint was issued, and within two weeks, the defendant voluntarily surrendered himself to the authorities. He was then indicted on charges of distributing a controlled substance in violation of 21 U.S.C. § 841(a)(1), and he was eventually convicted by a jury. The district court sentenced the defendant to 21 months.

## II. *ANALYSIS*

The defendant challenges his conviction claiming that several fundamental errors were committed during his trial. We find no merit in these challenges, and, in fact, find that most of his arguments can be dispatched without much discussion. There is at least one issue raised, however, that our court has not yet squarely addressed, and therefore, it deserves slightly more attention. We deal with that last issue initially.

### A. *Cross–Examination of Defendant's Alibi Witness*

■ The crux of Aguwa's defense was that this was a case of mistaken identity. Along these lines, his wife provided him with an alibi at trial, testifying that she had been having dinner with him at a restaurant at the time the drug transaction would have taken place, and also that he did not have access to the BMW during that time. On cross-examination, however, the prosecution elicited the fact that Mrs. Aguwa had failed to come forward with the alibi until the eve of trial, and had not spoken about this "alibi" to anyone else. This cross-examination brought forth the implication that the testimony had been fabricated by the witness in a desperate, last-ditch effort to exculpate her hus-

band. During closing argument, the prosecution explicitly challenged her credibility based on the timing of her revelation.

The defendant contends that the prosecution's line of questioning and argument was improper because no meaningful inference can or should be drawn from the mere fact that a witness may not have immediately come forward and revealed the existence of an alibi for a defendant. Basically, then, although the defendant does not necessarily frame his argument in this fashion, he is claiming that such evidence is inadmissible under Federal Rule of Evidence 403 because its probative value is outweighed by other considerations. We disagree and hereby join several other circuits who have already confronted this question and concluded that this type of inquiry by the prosecution is proper. *See United States v. Laury*, 985 F.2d 1293, 1305–06 (5th Cir.1993) ("The prosecutor's comments regarding the failure of the witnesses to come forward sooner with [the defendant's] alibi was [sic] a permissible attack on their credibility."); *United States v. Johns*, 734 F.2d 657 (11th Cir.1984); *United States v. Carr*, 584 F.2d 612 (2d Cir.1978).

■ Under Rule 403, relevant evidence is presumptively admissible unless "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury...." Under this Rule, the question becomes whether there is good cause to prevent the jury from considering otherwise admissible evidence, to screen out proof that might confuse, mislead, or somehow incite an irrational reaction from the jury that would undermine the legitimacy of a verdict. Such a determination necessarily entails a case-by-case examination, and is therefore committed to the discretion of the trial judge. *See, e.g., Doe v. Claiborne County, Tennessee*, 103 F.3d 495, 515 (6th Cir. 1996) ("A district court's evidentiary balancing under Rule 403 is a decision this court reviews for abuse of discretion.").

Under the circumstances presented in this case, we find that the district court did not abuse its discretion, because we are convinced that the witness' delay in providing an alibi for her husband is an appropriate sub-

ject of inquiry. As the defendant's spouse, the witness clearly would have been aware of the pending charges against her husband, and would have also obviously recognized the significance of timely providing him with an alibi. There was also never any formal notice of alibi given by defendant. Furthermore, inasmuch as the defendant has never even attempted to provide an explanation for the delay, there is no basis on which to conclude that the inference suggested by the prosecution was somehow inherently confusing or misleading or unfairly prejudicial.[1]

Our view here is reinforced by our previous decision in *Bradley v. Jago*, 594 F.2d 1100 (6th Cir.1979). There the court said very clearly that *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), which holds that a prosecutor could not draw inferences from a defendant's post-arrest silence, does not prohibit an attempt to impeach the defendant by cross-examining him concerning his failure to present his alibi when his opportunity to do so came before he was in custody and before he was advised of his right to remain silent. *Id.* at 1102–03. Certainly, if a prosecutor may draw this inference with respect to the defendant's own failure to come forward, he may draw this inference for the jury with respect to other defense witnesses as well. In fact, we believe that the prosecutor would have been remiss had he allowed the defense witness to testify without cross-examining her about the fact that the alibi defense was not previously disclosed. Accordingly, we cannot conclude that the district court abused its discretion.

**B.** *Admission of Alleged Hearsay Evidence*

■ The controlled purchase of heroin from the defendant occurred by complete happenstance in this case only after the intended target of the investigation failed to appear according to the original plan. In an effort simply to account for the events leading up to their chance encounter with the defendant, DEA agents testifying at trial recounted several statements made by the informant. Specifically, they testified that the informant told them that the original target of the investigation was not in the restaurant, that she recognized Tiger who was across the street standing by a set of pay phones, and that Tiger was making phone calls to individuals who might supply the heroin.

The defendant claims that this evidence was inadmissible hearsay, but we disagree. The statements were not offered "for the truth of the matter asserted," *see Fed. R.Evid.* 801(c), but only to provide background information and to explain how and why the agents even came to be involved with this particular defendant. We have already specifically sanctioned the use of such out-of-court statements to the extent that they are "only offered to construct the sequence of events leading up to the drug transaction." *United States v. Evans*, 883 F.2d 496, 501 (6th Cir.1989).

The defendant acknowledges our holding in *Evans* but claims that the government exceeded the scope of that case, citing decisions where information offered as "background" was excluded on the basis that it was indeed inadmissible hearsay. *See, e.g., Moore v. United States*, 429 U.S. 20, 97 S.Ct. 29, 50 L.Ed.2d 25 (1976); *United States v. Tussa*, 816 F.2d 58 (2d Cir.1987); *United States v. Ocampo*, 650 F.2d 421 (2d Cir.1981). We find these cases to be wholly inapposite, however, because they concern statements that were not limited to "construct[ing] the sequence of events" as in *Evans*. Instead, they directly implicated each defendant in criminal activity. For example in the *Moore* and *Tussa* cases, the out-of-court statements described each defendant's possession of drugs, which was actually an element of the charged offense in each case. Similarly, in *Ocampo*, the out-of-court statement served to identify a nickname used by the defendant, which happened to be the only link between the defendant and several crucial records documenting drug activity. In the present case, by comparison, none of the informant's statements repeated at trial implicated the

---

1. Even had an explanation been proffered by the defendant in this case, it is unlikely that this would affect our conclusion. The defendant made no objection to the cross-examination at trial.

defendant in the drug transaction at issue. The incriminating details were conveyed solely by DEA agents pursuant to their own personal observations.

In the alternative, the defendant claims that even if the informant's statements are not treated as hearsay, the district court should have at least instructed the jury that the statements could not to be considered for their truth, so as to avoid any confusion and undue prejudice. We fail, however, to see how there could possibly have been any confusion or prejudice here, because even assuming that the jury did indeed consider the statements for their truth, they did not tend to implicate the defendant in any way. In any event, defense counsel failed to object to any of the testimony and, therefore, waived any objection. In view of this fact, the jury could properly consider the statements for their truth anyway.

## C. Impeachment Evidence

■ Inasmuch as the defendant maintained that this was a case of mistaken identity, an important strategy pursued throughout trial was to test the credibility of the DEA agents who implicated him in the heroin transaction. Specifically, there were some prior statements allegedly made by the agents tending to suggest that the defendant might not have been the individual involved in the drug transaction at issue. For example, although Agent Brown testified that the driver of the BMW was indeed the source of the heroin, the defendant's counsel brought out during cross-examination that a report prepared by a DEA supervisor, Sandy Shankin, indicated that Agent Brown had previously informed her that the passenger of the vehicle was actually the source of the heroin. Agent Brown denied the accuracy of the earlier report though, claiming that Shankin had simply misinterpreted his remarks.

On appeal, the defendant claims that the trial court should have granted the government's motion requesting a limiting instruction informing the jury that the prior inconsistent statements, not made under oath, should be considered only insofar as they tested credibility—not as substantive evidence. Aside from questions regarding the

defendant's standing to challenge the denial of *the government's motion*, we fail to comprehend how the defendant could have possibly been prejudiced. After all, to the extent that these statements tended affirmatively to exculpate the defendant, there is no purpose that might be served by having the court instruct the jury that they could not be considered for their truth. (The district court might have actually helped the defendant by failing to give the instruction now being requested.)

## D. Alleged Brady Violations

[5] The defendant claims that the prosecution violated its duty under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), to turn over exculpatory evidence, even though there is no dispute but that the prosecution timely turned over the reports containing the allegedly prior inconsistent statements. Instead, the defendant's claim focuses on the notion that he was also entitled to the agents' raw notes of events in question. These notes, however, contained no exculpatory information, and, in fact, were apparently highly incriminating. The notes were used by the agents to refresh their recollection before testifying, and their content is largely reflected in their trial testimony, which directly implicated the defendant. Furthermore, the defendant clearly exploited the alleged inconsistencies in the agents' statements, so that error, if any, would be harmless in any event.

## E. Sentencing

■ At sentencing, the district court granted the defendant a downward adjustment of two levels pursuant to § 3B1.2 of the Sentencing Guidelines. On appeal, the defendant claims that his guideline sentence range should have actually been reduced by four levels to reflect his minimal role in the offense of conviction. We review the district court's determination for clear error. *See United States v. Perry*, 908 F.2d 56, 58 (6th Cir.1990).

The defendant argues that the evidence in this case demonstrates that he was no more than a courier who arrived on the scene only after the deal was consummated by Tiger.

However, while this might indeed represent a plausible interpretation of the facts, it is by no means the exclusive one. As the prosecution points out, it is equally plausible to conclude that the defendant was actually "the brains of the outfit [who] sent the guy in the Tiger's cap out to make the transaction; and once done ... arrive[d] to finalize the deal." In fact, under this latter interpretation of the facts, the defendant might actually have been susceptible to an upward rather than a downward adjustment. In any event, inasmuch as other interpretation might be reasonable, we cannot conclude that the district court committed clear error.

### F. *Ineffective Assistance of Counsel*

█ Finally, the defendant claims that he received ineffective assistance of counsel. Generally, though, "this court will not review [such claims] on direct appeal because the record has not been sufficiently developed for assessing the merits of the allegation." *United States v. Goodlett,* 3 F.3d 976, 980 (6th Cir.1993). This rule stems from the fact that a finding of prejudice is a prerequisite to a claim for ineffective assistance of counsel, *see Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and appellate courts are not equipped to resolve factual issues. As a result, our court has routinely concluded that such claims "are best brought by a defendant in a post-conviction proceeding under 28 U.S.C. § 2255 so that the parties can develop an adequate record on the issue." *Id.* We see no reason to depart from that standard practice in this case.

### III. *CONCLUSION*

For the foregoing reasons, we **AFFIRM** the defendant's conviction and sentence in all respects.