RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0004P (6th Cir.)
File Name: 02a0004p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,
  *Plaintiff-Appellee,*

  *v.*

CARL BROWN (99-5613);
CARL SCRUGGS (99-5687),
  *Defendants-Appellants.*

Nos. 99-5613/5687

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 98-20015—Jon Phipps McCalla, District Judge.

Argued and Submitted: April 27, 2001

Decided and Filed: January 7, 2002

Before: NELSON and BATCHELDER, Circuit Judges;
FEIKENS, District Judge.*

———————————

## COUNSEL

**ARGUED:** Kevin M. Schad, SCHAD & COOK, Cincinnati, Ohio, for Appellant. Thomas L. Parker, ASSISTANT

---

*The Honorable John Feikens, United States District Judge for the Eastern District of Michigan, sitting by designation.

1

UNITED STATES ATTORNEY, Memphis, Tennessee, for Appellee. **ON BRIEF:** Kevin M. Schad, SCHAD & COOK, Cincinnati, Ohio, for Appellant.    Thomas L. Parker, ASSISTANT UNITED STATES ATTORNEY, Memphis, Tennessee, for Appellee. Carl Scruggs, Memphis, Tennessee, pro se.

BATCHELDER, J., delivered the opinion of the court, in which NELSON, J., joined.  FEIKENS, D. J. (pp. 13-17), delivered a separate dissenting opinion.

---

**OPINION**

---

ALICE M. BATCHELDER, Circuit Judge.    In their separate appeals, Defendants Carl Brown and Carl Scruggs raise identical challenges to their convictions on a single count of aiding and abetting in the attempt to possess cocaine with the intent to distribute it, and we will therefore dispose of the two appeals in one opinion.  Both defendants claim that the district court was without jurisdiction to hear the case and further erred by refusing to allow into evidence testimony from a similar state proceeding, failing to hold a hearing to investigate claims of prosecutorial misconduct, permitting the government to present the testimony of a witness who agreed to testify in exchange for a sentence reduction, permitting the scope of re-direct examination to exceed matters raised on cross-examination and providing a jury instruction that required a finding of guilt.  Defendant Scruggs also appeals his sentence, claiming that the court erred by applying sentencing enhancements. We will affirm the judgment of the district court.

**I.**

A federal grand jury indicted Carl Scruggs and Carl Brown on one count of aiding and abetting in the attempt to possess cocaine with the intent to distribute it, in violation of 21 U.S.C. § 846 (2001), and 18 U.S.C. § 2 (2001).  Shortly

thereafter, the grand jury returned a superceding indictment adding Yolanda Franklin ("Franklin") as a third co-defendant. Franklin agreed to plead guilty; Scruggs and Brown each pled not guilty. The government filed a motion in limine to prevent Scruggs and Brown from attempting to raise before the jury any mention of the charges pending against them in state court arising out of the same set of facts. The court granted this motion. Brown filed a motion in limine to exclude Franklin's testimony on the ground that she had received something of value, namely a sentence reduction, in exchange for it. The court denied this motion. Brown and Scruggs went to trial and were found guilty by the jury. Scruggs moved for a new trial; this motion was denied. Prior to sentencing, Scruggs discharged his counsel and proceeded pro se. The court sentenced him to 329 months in prison, to be followed by eight years of supervised release. Brown was sentenced to 360 months in prison, to be followed by eight years of supervised release. Both defendants filed timely appeals.

Brown and Scruggs were apprehended while attempting to remove 3.7 kilograms of cocaine from a home in Memphis, Tennessee. Yolanda Franklin had informed Brown that Franklin's sister, Karon White (who had allegedly been romantically involved with Brown) had cocaine hidden in her home. The cocaine had been stashed there by Renard Rice, a convicted drug-dealer and acquaintance of Karon White. Brown and Scruggs agreed to attempt to rob White's home and split the proceeds from the sale of any cocaine they might find. While visiting White's residence—at a time when White apparently was not at home—Franklin loaned her car to White's 16-year-old daughter, Nastassia Crump. Crump took her younger sisters and her aunt (Tritobia White) to the store, leaving Franklin alone in the house to search for the cocaine. She found it in a plastic garbage bag hidden in an attic access panel in the hallway. She did not disturb the cocaine, but reported her findings to Brown.

That afternoon, Brown and Scruggs, wearing ski masks and gloves and carrying guns, entered the White residence. They

found four children, one of whom had been able to dial 911 prior to being discovered, and Tritobia White; they restrained all five with duct tape. When the police arrived, they apprehended Brown as he was leaving through the back door of the home. After freeing the children and learning from them that the robbery had been committed by two men carrying guns, the officers found Scruggs hiding in the basement behind a washer/dryer. The officers asked Scruggs where the weapons were, and he indicated a box from which the officers recovered two handguns. Brown admitted to a Drug Enforcement Agency agent that he and Scruggs had heard about the cocaine from Franklin, and had gone to the White residence to steal the drugs.

## II. Jurisdiction

Both Scruggs and Brown argue that the federal government lacks jurisdiction to prosecute them. We review questions of jurisdiction de novo. *United States v. Nash*, 175 F.3d 440, 442 (6th Cir. 1999).

The defendants claim that the Supreme Court's decision in *United States v. Lopez*, 514 U.S. 549 (1995), prohibits Congress from extending the reach of its authority to drug crimes that occur solely intrastate. This view has been soundly rejected by this circuit as well as every other circuit to address the issue. *United States v. Tucker*, 90 F.3d 1135, 1139 (6th Cir. 1996). *See United States v. Brown*, No. 97-1618, 2000 WL 876382, at *13 (6th Cir. June 20, 2000) ("Indeed, every circuit to consider post-*Lopez* challenges to the Comprehensive Drug Abuse Prevention and Control Act has upheld the Act as a valid exercise of Congress's authority under the Commerce Clause."); *see also*, *e.g.*, *United States v. Patterson*, 140 F.3d 767, 772 (8th Cir.), *cert. denied*, 525 U.S. 907 (1998); *United States v. Westbrook*, 125 F.3d 996, 1009 (7th Cir.1997); *United States v. Edwards*, 98 F.3d 1364, 1369 (D.C.Cir.1996); *United States v. Orozco*, 98 F.3d 105, 107 (3d Cir.1996); *United States v. Kim*, 94 F.3d 1247, 1249-50 (9th Cir.1996); *United States v. Rogers*, 89 F.3d 1326, 1338 (7th Cir.1996); *United States v. Lerebours*, 87

whose foreman reported that they were "hopelessly deadlocked" after they had been out seven hours. "In a trial by jury in a federal court, the judge is not a mere moderator, but is the governor of the trial for the purpose of assuring its proper conduct and of determining questions of law." Quercia v. United States, 289 U.S. 466, 469, 53 S. Ct. 698, 699, 77 L.Ed. 1321. "The influence of a trial judge on the jury is necessarily and properly of great weight," Starr v. United States, 153 U.S. 614, 626, 14 S.Ct. 919, 923, 38 L.Ed. 841, and jurors are ever watchful of the words that fall from him. Particularly in a criminal trial, the judge's last word is apt to be the decisive word. If it is a specific ruling on a vital issue and misleading, the error is not cured by a prior unexceptional and unilluminating abstract charge.

*Bollenbach v. United States*, 326 U.S. 607, 612, 66 S.Ct. 402, 405 (1946). Not only did the district judge in this case invade the jury's province, but he did so at a significant time in the jury's deliberations. He gave the jury its supplemental instruction at 2:25 p.m. At 3:10 p.m. the jury entered its verdict. The short span of time it took for the jury to convict is an indication of the influence of the judge's instruction.

I therefore must recommend this case be remanded for a new trial.

constitutional adjudication. The trial judge instructs the jury on the law applicable to the issues raised and, in appropriate circumstances, may comment on the evidence. *United States v. White Horse,* 807 F.2d 1426, 1430 (8th Cir. 1986); *United States v. Johnson*, 718 F.2d 1317, 1322, 1324-25 (5th Cir. 1983) (en banc); 8A J. Moore, W. Taggart & J. Wicker, Moore's Federal Practice ¶30.05 at 30-40 (1987). The jury then independently determines the facts, and applies the law to those facts, in reaching its fateful decision. *White Horse,* 807 F.2d at 1430; *Johnson,* 718 F.2d at 1325. *See also* 2 C. Wright, Federal Practice & Procedure § 485, at 711 (1982). However, the trial judge invades the jury's province when, instead of simply instructing on the law, he applies the law to facts he has determined. *See White Horse,* 807 F.2d at 1430 ("when the judge is no longer deciding the law that applies to the evidence, but rather is applying the law to the facts–facts that are determined after assessing the probative value of evidence introduced at trial – the judge has invaded the jury's province.").

*Id.* at 319-20. In the case before us, the district court judge applied the law to the facts that he determined when he stated, after giving his troubling example, "Now the person entered the warehouse without the intent necessary to constitute the attempt... but he formed or appears to have formed or certainly be proof that he formed the requisite intent once he determined this there was marijuana there and he determined to remove the marijuana and transport it to some other location for distribution."

In upholding appellants' convictions in the face of such a clearly erroneous instruction, the court fails to recognize the power, weight and authority a judge's opinion has upon a jury.

But precisely because it was a "last minute instruction" the duty of special care was indicated in replying to a written request for further light on a vital issue by a jury

F.3d 582, 584-85 (1st Cir.1996); *United States v. Genao,* 79 F.3d 1333, 1336 (2d Cir. 1996); *United States v. Wacker*, 72 F.3d 1453, 1475 (10th Cir.1995); *United States v. Clark*, 67 F.3d 1154, 1166 (5th Cir.1995), *vacated on other grounds*, 519 U.S. 802 (1996); *United States v. Leshuk*, 65 F.3d 1105, 1111-12 (4th Cir.1995).

The defendants also claim that federal jurisdiction is lacking because the government failed to prove that Brown and Scruggs intended to possess the cocaine, and that the chief government witness (Franklin) lacked credibility. These are not challenges to jurisdiction, but rather challenges to sufficiency of the evidence, and the credibility of Franklin and the government's ability to prove defendants' intent does not call into doubt federal jurisdiction.

Treating these arguments as challenges to the sufficiency of the evidence, we note that they still fail. The record is replete with evidence that Brown and Scruggs intended to steal cocaine from Karon White's house and distribute it. This evidence includes Franklin's testimony that she entered into an agreement with Brown to steal the cocaine, and that Brown and Scruggs went to the home at her direction with the intention of finding the cocaine, selling it and splitting the proceeds with her. The jury weighed this evidence and determined that the defendants had intended to possess the cocaine. The defendants were free to attack the credibility of the government's witnesses, and in fact did so. Unfortunately for Brown and Scruggs, the jury believed Franklin.

The defendants' claim that the federal government lacks jurisdiction to prosecute this case is wholly without merit. Further, even addressing these claims as arguments against the sufficiency of the evidence, we hold that they are entirely without merit.

### III. Exclusion of evidence from State proceedings

The defendants claim that the district court erred by granting the government's motion in limine, which prevented them from using the testimony of the government's witnesses

from the state court aggravated robbery proceedings to impeach the testimony of those same witnesses in the trial in federal court. They claim as well that the trial court prevented them from introducing a tape of the state court preliminary hearing which, they argue, would have demonstrated that the testimony of government witnesses at their trial was inconsistent with statements made by witnesses during the state proceedings. We review evidentiary rulings for an abuse of discretion, and we must sustain those rulings unless they are manifestly erroneous. *United States v. Bonds*, 12 F.3d 540, 554 (6th Cir. 1993).

The district court found that the state charges were irrelevant to the federal prosecution. The defendants point to no specific testimony from the state court proceedings that would support their claim that the prior statements of these witnesses were inconsistent with their testimony in this trial. Neither have the defendants demonstrated how the prior testimony would have been relevant. Finally, the record reflects that the government timely provided the tape from the state court preliminary hearing to the defendants, but the defendants neither sought to introduce it at trial nor to obtain any ruling from the court on its admissibility or use for impeachment purposes. We do not find that the district judge's granting of the motion in limine was manifestly erroneous.

## IV.  The court's supplemental jury instructions

The defendants next claim that the court erred in responding to a legal question posed by the jury. The trial court is entitled to exercise its sound discretion in deciding how best to respond to inquiries made by the jury during its deliberations. *United States v. Nunez*, 889 F.2d 1564, 1568 (6th Cir. 1989). "In response to a jury's question after it has begun deliberating, however, a trial judge may and should make clear the law the jury is bound to apply, though it is not his province to advise the jury of collateral aspects of its decision." *Id.* ( quoting *United States v. Rowan*, 518 F.2d 685, 693 (6th Cir. 1975)).

prejudice once created could be removed by a mere withdrawal of the words." *Id.* (citing *Rudd v. United States*, 173 F. 912 (8th Cir. 1909)). In *United States v. Schultz,* 235 F.2d 684 (7th Cir. 1956), the Seventh Circuit held similarly. The trial judge in that case, when ruling on an objection to witness testimony, said, "'[S]uppose a man were charged with committing a robbery, and then the next day he want [*sic*] and took the money back, every cent of it. He might still be found guilty in such an instance, even though he returned every cent of it.'" *Id.* at 685. The judge later repudiated his statement. However, he then attempted another example. After instructing the jury to disregard the example he went on to say, "'It would be more proper probably to say, suppose I were to go over to Peacock's somewhere and slip my hand in, and got a big diamond ring and took it home and then, after thinking it over, the next day I took it back.'" *Id.* at 686. The Seventh Circuit held that this attempt to cure was also unsuccessful. "The [first] illustration used by the court was unfortunate and prejudicial. In fact, in the charge to the jury the court termed it 'inept.'... The second illustration was very little improvement on the first. It is likely the court's remarks made a dramatic impression on the jury. ... We think the illustrations used by the court were prejudicially erroneous." *Id.*

"The standard on appeal for a court's charge to the jury is whether the charge, taken as a whole, fairly and adequately submits the issues and applicable law to the jury." *United States v. Martin*, 740 F.2d 1352, 1360 (6th Cir. 1984) (rehearing and rehearing en banc denied). It is well established that "[r]egardless of how overwhelming the evidence may be, the Constitution delegates to the jury, not to the trial judge, the important task of deciding guilt or innocence." *United States v. Mentz,* 840 F.2d 315, 319 (6th Cir. 1988). Therefore, in instructing the jury, a judge may not invade the jury's province by unequivocally implying that a defendant's guilt has been established.

In a criminal trial, the trial judge and the jury have well-defined roles, refined over many years of

inform the jury of a point of law, the judge cannot, in answering a jury's query, merely reiterate his or her previous instruction. *See id.* "In *United States v. Giacalone*, 588 F.2d 1158 (6th Cir. 1978), *cert denied,* 441 U.S. 944, 99 S. Ct. 2162, 60 L.Ed.2d 1045 (1979), we made clear that a supplemental instruction is one that goes beyond reciting what has previously been given; it is not merely repetitive. Reiterating the rule stated in *Rowan* that a trial court has a duty 'to clear up uncertainties which the jury brings to the court's attention,' we stated that the propriety of a supplemental instruction must be measured 'by whether it fairly responds to the jury's inquiry without increasing prejudice.' *Giacalone*, 588 F.2d at 1166." *Id.* at 1568. It follows, therefore, that an erroneous supplemental instruction cannot be saved by reference to a previous, ambiguous instruction.

Even had the judge acknowledged his error and retracted his example, such retraction could not have cured the error. In *Sunderland v. United States*, 19 F.2d 202 (8th Cir. 1927), the defendants were charged with conspiracy and use of mails to defraud by sale of corporate securities. The judge, in his charge to the jury, in order to illustrate "the principles of law that are most directly involved" told the story of the "old gold brick swindle" placing himself in the story. *Sunderland*, 19 F.2d at 212. In the example, he and another man make an old clay brick appear to be a gold brick by filling it with lead and covering it in gold leaf. A third man arranges for the sale of the brick agreeing to split the proceeds of the sale. Later, however, after the defense counsel objected to the charge the judge rescinded his illustration. "Gentlemen of the jury, I am persuaded that I made a serious error in using before you and picking out the common old swindle, the gold brick swindle, and using that to illustrate the points of law applicable to the conspiracy and swindling scheme." *Id.* at 213. However, the Eighth Circuit held that this could not save such an erroneous instruction. "It requires no argument to convince that this 'gold brick' illustration was unfortunate and prejudicial. This was finally conceded by the court and the illustration withdrawn, but we entertain grave doubt whether the

In this case, the jury asked whether, in order to have had the intent to possess the drugs, the defendants had to know before they arrived at White's house that cocaine was in the house. The court answered:

> It is not necessary for a defendant to know in advance of entering the premises that drugs are on the premises in order for the offense of attempt to possess cocaine with intent to distribute to occur. It is only necessary that the defendant form the requisite intent before the defendant was apprehended or before the police arrived on the scene. So an individual – and let me give you an example. Let's say that a defendant decided to burglarize a warehouse with the intention of taking the goods that they find in the warehouse and selling them or doing whatever. The person gets in the warehouse and finds that, in fact, the warehouse is storing bales of marijuana as well as a lot of other stuff. The defendant picks up the bale of marijuana and attempts to leave with the bale of marijuana. I'm talking about a large quantity. Now, the person entered the warehouse without the intent necessary to constitute the attempt – the crime of attempt to possess with intent to distribute marijuana, but he formed or appears to have formed the requisite intent once he determined this [sic] there was marijuana there and he determined to remove the marijuana and transport it to some other location for distribution.

J.A. 379-80. We are troubled by the similarity between the district court's example and the evidence presented at trial, and we think that the supplemental instruction without the example would have correctly answered the legal question posed by the jury. We recognize, however, that the court made a special effort to prevent any error from occurring by reminding the jury to consider the instructions as a whole, and further emphasizing that:

> And the jury has to, from the evidence that is presented in this case, determine as to each defendant whether that individual defendant formed at any time before

apprehension the requisite intent. Did they know there was cocaine and did they, or he, it's individual, one at a time, determine to control the cocaine, possess it, remove it, whatever, with the intent to distribute it.

J.A. 381. On balance, we conclude that the district court's response did not constitute an abuse of discretion.

## V.  Failure to hold a hearing on prosecutorial misconduct

The defendants assign as error the district court's failure to hold a hearing on their allegations of government misconduct that they believe entitles them to a new trial. We review the district court's determinations on the motion for a new trial for an abuse of discretion. *United States v. Seago*, 930 F.2d 482, 488 (6th Cir. 1991). The defendants claim that the prosecution "hid and distorted evidence," "tampered with witnesses, threatened witnesses," including Brown's mother. The defendants also allege that the Assistant United States Attorney committed and suborned perjury. Brown's attorney cites this circuit's decision in *United States v. Foster*, 128 F.3d 949 (6th Cir. 1997), for the proposition that the district court erred by not holding a hearing on prosecutorial misconduct. In *Foster*, which defense counsel miscites as "Frost," it was undisputed that the prosecution had threatened a defense witness with revocation of immunity if the witness testified at the defendant's trial. This court noted that this prosecutorial misconduct was subject to a harmless error analysis, and opined that the trial court should have conducted a hearing to determine whether the misconduct was harmless. *Id*. at 954. However, to require the court to undertake a harmless error inquiry, the defense must first present some evidence that the prosecutor engaged in some kind of misconduct.

In the case before us, neither defendant has pointed to any evidence in the record—or, for that matter, outside the record—to support a claim of prosecutorial misconduct. Brown claims that certain pictures presented at trial, showing the cocaine in two different locations at the crime scene, call

## DISSENT

FEIKENS, District Judge, dissenting. I respectfully dissent from the majority's opinion. With due respect, the court tries to paper over the similarity between the district court's example and the question asked by the jury – whether in order to have the intent to possess the drugs, the defendants had to know before they arrived at White's home that cocaine was in the house.

We must take the situation that the judge faced one step at a time. The jury asked whether the defendants had to know before they arrived at White's house, that there was cocaine there, in order to have the necessary intent. To this the judge said no, but he realized that this would not answer the jury's question. He correctly inferred that they wanted to know at what point could intent be found. But in trying to help them as to this question, he erred. If, at that point, he did not give the example to the jury that he did and had simply said that *they had to decide whether an individual defendant, at any time before he was apprehended, had to have formed the requisite intent*, this would have been a proper response to the jury question. But he moved on and gave them an example which exactly fit the evidence in the case. In doing this he took from them the task of finding necessary intent from the evidence in the case.

The court takes comfort in the judge's reliance on his previous instruction to save it from error. The court correctly cites to *U.S. v. Nunez* for the proposition that "In response to a jury's question after it has begun deliberating [] a trial judge may and should make clear the law the jury is bound to apply, though it is not his province to advise the jury of collateral aspects of its decision." *United States v. Nunez,* 889 F.2d 1564, 1568 (6th Cir. 1989) (quoting *United States v. Rowan*, 518 F.2d 685, 693 (6th Cir. 1975)). *Nunez,* however, also teaches that where a previous instruction does not sufficiently

he had hidden them. The victims had testified that both Scruggs and Brown were armed when they entered the home and that the defendants restrained them with duct tape. After reviewing the record, we hold that the district court's findings of fact are not clearly erroneous and that its application of the Guidelines to those facts is clearly correct.

The Guidelines provide for a two-level increase for a drug-trafficking offense "[i]f a dangerous weapon (including a firearm) was possessed." U.S. Sentencing Guidelines Manual (USSG) § 2D1.1(b)(1) (2001). This enhancement is applicable unless it is "clearly improbable" that the weapon was connected to the offense. USSG § 2D1.1, cmt. n.3. We have held that once the government has established that the defendant actually or constructively possessed the weapon, the burden shifts to the defendant to show that it is clearly improbable that the possession of the weapon was connected to the offense. *United States v. Hill*, 79 F.3d 1477, 1485 (6th Cir. 1996). Scruggs utterly failed to carry that burden.

The Guidelines also call for a two-level increase if the defendant knew or should have known that a victim of the offense was a vulnerable victim, defined by the Commentary as someone "unusually vulnerable due to age, physical or mental condition." USSG §§ 3A1.1(b)(1), and 3A1.1, cmt. n.2. Finally, the Guidelines call for a two-level increase if a victim was physically restrained in the course of the offense. USSG § 3A1.3. The district court correctly concluded that binding children with duct tape invokes both of these enhancements. Accordingly we hold that the district court did not err in applying the enhancements.

## X.

For the foregoing reasons the district court's judgment of conviction and sentence as to each of these defendants is **AFFIRMED**.

into question the veracity of statements made on the stand. We find nothing in the record, however, that lends substance to defendants' apparent contention that witnesses lied and their false testimony is evidence of prosecutorial misconduct. These claims surfaced for the first time during the sentencing hearing. The district court listened patiently to these allegations when the defendants presented them.[1] The transcript shows that neither defendant offered a shred of evidence beyond the bare allegations of misconduct and neither defendant requested a hearing on these matters, either through a formal motion or an oral request. Even if we were to treat these prosecutorial misconduct claims first raised at sentencing as an oral motion for a new trial, the motion was not timely made. We find no abuse of discretion by the trial court in failing to inquire further.

## VI. Ineffective assistance of counsel

We do not address on direct appeal claims of ineffective assistance unless the record has been sufficiently developed to provide meaningful factual review. *See United States v. Aguwa*, 123 F.3d 418, 423 (6th Cir. 1997)("Generally, though, this court will not review [such claims] on direct appeal because the record has not been sufficiently developed for assessing the merits of the allegation.")(internal quotations omitted). In this case, we have no evidence to evaluate counsel's performance at trial. The only indication of defense counsel's effectiveness comes from the district court judge, who, when the defendants raised these claims during the sentencing hearing, applauded counsel's performance. Accordingly, we will defer review of these claims to a post-conviction proceeding where the record may be fully developed. *See id.* ("[O]ur court has routinely concluded that

---

[1] The government's briefs fairly describe the presentations by Brown and Scruggs as "diatribes." We would only add that the sum and substance of each defendant's statement was that he was not guilty as charged, and the district court patiently reviewed the overwhelming evidence to the contrary and declined to grant a new trial or any other relief.

such claims are best brought by a defendant in a post-conviction proceeding under 28 U.S.C. § 2255 so that the parties can develop an adequate record on the issue.")(internal quotations omitted).

## VII.  Scope of re-direct examination

During cross-examination of a government witness, Scruggs's counsel elicited the information that no fingerprints were found on the guns or the packages of cocaine. The defendants claim that the court erred by permitting the prosecution, on re-direct examination, to ask about gloves found at the scene of the crime. The scope of redirect examination is committed to the sound discretion of the court. *United States v. Segines*, 17 F.3d 847, 856 (6th Cir. 1994).

A keystone of the defense's case is that Scruggs and Brown could not have possessed the guns or the cocaine because their fingerprints were not on either. The suggestion by the defendant's counsel that the absence of fingerprints is evidence that the defendants did not commit the crimes alleged opened the door to the entirely relevant question of whether gloves were found at the crime scene. This assignment of error is meritless.

## VIII.  Testimony of Yolanda Franklin

In reviewing a motion to suppress testimony, we review factual findings for clear error; we review legal determinations de novo. *United States v. Williams*, 962 F.2d 1218, 1221 (6th Cir. 1992).

The defendants objected to the court's allowing testimony from co-conspirator Yolanda Franklin, claiming that the government had offered her "something of value" in exchange for her testimony, in violation of 18 U.S.C. § 201(c)(2) (2001). There is no dispute that Franklin's plea agreement included the government's commitment to file a motion for a downward departure based on cooperation and substantial assistance. This circuit has unambiguously held that plea agreements which contemplate departure motions in exchange

for cooperation do not violate 18 U.S.C. § 201 (c) (2). *United States v. Ware*, 161 F.3d 414, 418-19 (6th Cir. 1998). The district court correctly found that the government's promise of a motion for a downward departure did not violate the statute. This assignment of error is meritless.

## IX.  Sentencing enhancements

Finally, Scruggs claims that the court erred in applying upward adjustments for weapons possession and the forcible restraint of children.[2] In reviewing challenges to a guideline sentence, an appellate court

> shall give due regard to the opportunity of the district court to judge the credibility of the witnesses, and shall accept the findings of fact of the district court unless they are clearly erroneous and shall give due deference to the district court's application of the guidelines to the facts.

18 U.S.C. § 3742(e) (2001).

Although at sentencing Scruggs vociferously denied that he had possessed any guns while at White's residence or that he had used duct tape to restrain anyone on the premises, the district court specifically found that during the defendants' search for cocaine, Scruggs had constructive possession of firearms and that the defendants had restrained the victims, including several children, with duct tape. The district court made it clear that, having presided over the trial, it was crediting the trial testimony of the arresting officers and the victims. The officers had testified that when he was arrested, Scruggs indicated that the guns could be found in a box where

---

[2]The government contends that Scruggs waived his objections to these enhancements by failing to raise them before the trial court. In fact, although he did not file written objections to the presentence investigation report (which included both of the enhancements) during the sentencing hearing, Scruggs emphatically challenged the district court's findings that any of the children had been restrained or that he had used any duct tape. We think this is sufficient, particularly since Scruggs was proceeding pro se, to preserve his objection.