**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Danell SMITH, Defendant–Appellant.**

**No. 02–2293.**

United States Court of Appeals,
Sixth Circuit.

Jan. 30, 2004.

---

Kathleen Moro Nesi, Asst. U.S. Attorney, U.S. Attorney's Office, Detroit, MI, for Plaintiff–Appellee.

Margaret Raben, Gurewitz & Raben, Detroit, MI, for Defendant–Appellant.

Before ROGERS and COOK, Circuit Judges; and BERTELSMAN, District Judge.[*]

ROGERS, Circuit Judge.

Danell Smith appeals his conviction of conspiracy to possess with intent to distribute and to distribute crack cocaine in violation of 21 U.S.C. §§ 841(a) and 846,

---

[*] The Honorable William O. Bertelsman. Senior United States District Judge for the Eastern District of Kentucky, sitting by designation.

contending that he was denied a fair trial when the prosecutor made an improper closing argument. Smith also appeals his sentence, arguing that his counsel was ineffective for failing to move to adjourn his sentencing until a beneficial guideline amendment went into effect. Because the prosecutor's argument did not deny Smith a fair trial, we affirm his conviction. We decline to consider Smith's claim of ineffective assistance of counsel on direct review, as the record has not been sufficiently developed to permit its resolution, and we therefore affirm his sentence.

## I. Background

On January 14, 2001, Smith, along with numerous co-defendants, was indicted for conspiring to possess with intent to distribute and to distribute drugs in violation of 21 U.S.C. §§ 841(a) and 846.[1] All of Smith's co-defendants entered guilty pleas, but Smith pled not guilty. Smith's jury trial commenced on March 27, 2002, and ended on March 29, 2002, when the jury returned a guilty verdict. On October 22, 2002. Smith was sentenced to 188 months' imprisonment, the bottom of his 188–235 month guideline range. Smith filed a timely notice of appeal.

Smith raises two arguments on appeal. First, Smith claims that he was denied a fair trial when the prosecutor made an improper closing argument, in that the prosecutor allegedly vouched for a witness, implied facts not in evidence, and appealed to jury sympathy. Second, Smith claims that his attorney was ineffective because he failed to ask the court to adjourn sentencing until new sentencing guidelines— under which Smith's guideline range would be only 97–121 months—came into effect on November 1, 2002.

---

1. While the indictment charged a conspiracy to distribute powder cocaine, crack cocaine, and heroin, the allegations against Smith

## II. Analysis

### A. The prosecutor's closing argument did not deprive Smith of a fair trial.

■ Smith's contention that he was denied a fair trial by statements made by the prosecutor during closing arguments is without merit because the statements complained of were proper. Claims of prosecutorial misconduct are mixed questions of law and fact, which we review de novo. *United States v. Tarwater*, 308 F.3d 494, 511 (6th Cir.2002). However, because Smith failed to make contemporaneous objections to the allegedly improper arguments. Smith must demonstrate plain error. *United States v. Koeberlein*, 161 F.3d 946, 949 (6th Cir.1998). To establish plain error, Smith must show (1) there was an error under current law; (2) the error was plain, i.e., clear or obvious; (3) the error affected substantial rights, i.e., it must be prejudicial; and (4) the case warrants the exercise of discretion to correct a plain forfeited error affecting substantial rights if the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Rogers*, 118 F.3d 466, 471–73 (6th Cir.1997) (citations and quotations omitted).

The Sixth Circuit employs a two-step inquiry in determining whether prosecutorial misconduct warrants a new trial. First, the court considers whether the prosecutor's remarks were improper. If the remarks were improper, the court must decide whether the impropriety was so flagrant as to warrant reversal. In determining if reversal is warranted, the court must consider "1) whether the statements tended to mislead the jury or prejudice the defendant; 2) whether the state-

---

were limited to the crack cocaine end of the conspiracy.

ments were isolated or among a series of improper statements; 3) whether the statements were deliberately or accidentally before the jury; and 4) the total strength of the evidence against the accused." *United States v. Green,* 305 F.3d 422, 429–30 (6th Cir.2002) (quoting *United States v. Francis,* 170 F.3d 546, 549–50 (6th Cir.1999).

Smith alleges that three of the prosecutor's statements relating to the testimony of Willie Robinson, who testified that he had purchased crack cocaine from Smith, were improper. First, Smith contends that the prosecutor improperly suggested that the fact that Robinson was reluctant to testify made his testimony more credible. Second, Smith argues that the prosecutor's comment about how difficult it was to find crack addicts who had bought drugs from a particular dealer and successfully obtain testimony from them at trial was a reference to facts not in evidence, an improper appeal for sympathy, or both. Finally, Smith contends that the prosecutor's statement. "That man [Robinson] knew what he was talking about," was an improper attempt to vouch for Robinson, because the statement suggested that the prosecutor had other evidence bolstering Robinson's testimony.

First, the prosecutor's suggestion that the jury should consider Robinson's reluctance to testify was not improper.[2] The trial court properly instructed the jury that, in evaluating each witness's testimony, the jury could consider whether

the witness had any relationship to either side of the case or anything to gain or lose that might influence the witness'

testimony. Ask yourself if the witness had any biases or prejudice or reason for testifying that might cause the witness to lie or to slant testimony in favor of one side or another.

J.A. at 334.[3]

Robinson testified that he did not want to testify, that he was only testifying because the government subpoenaed him, that he liked Smith, and that Smith had never tried to cheat him when he bought drugs from Smith. It was not improper for the prosecutor to suggest that the jury consider those facts in evaluating Robinson's credibility.

■ Nor were the prosecutor's comments about the difficulty in obtaining testimony from a crack dealer's customers improper, because the prosecutor simply asked jurors to use common sense. On rebuttal—in response to defense counsel's statement taking the government to task for producing only a single witness who allegedly bought crack cocaine from Smith—the prosecutor argued

Do you know how hard it is to find a crack addict on the street who is the customer of a person you have on trial, who you're able to find and actually get into court by subpoena or otherwise, and then—and then get them to go up there and admit a crime—you know it's a crime to be taking crack—without preserving their Fifth Amendment or saying I want a lawyer or anything else? What's the odds of that?

J.A. at 255. That statement, Smith argues, relied on facts not in evidence and

---

**2.** The prosecutor argued, "You saw Willie Robinson. You can evaluate his credibility yourself. I suggest to you he was a credible witness, even if he does have problems. He said—he said he likes [Smith], he likes him. Doesn't want to be here, took a subpoena to

bring him in here, but he's—he's bought crack from him. That's what he said."

**3.** The trial court's instruction largely conformed to Instruction No. 1.07 from the Pattern Criminal Jury Instructions of the District Judges Association of the Sixth Circuit (1991).

498

was an improper appeal for sympathy for the police.

The fact that crack addicts would be reluctant to come to court and testify against their dealers, which would involve admitting under oath to engaging in criminal activity, is a common-sense proposition. A prosecutor does not rely on facts not in evidence by simply asking jurors to make common-sense inferences from the evidence.

Second, the prosecutor's comments cannot be construed as an improper appeal for sympathy for police officers. Presumably, Smith's contention is based on the fact that the comments suggest that investigating drug crimes is difficult. Pointing out that something is difficult, however is far cry from suggesting that jurors not hold the government to its burden because police officers have difficult jobs. There is nothing in the record indicating that the prosecutor ever asked the jurors to feel sorry for the police.

Even assuming arguendo that the prosecutor's comments were improper, reversal of Smith's conviction is unwarranted, because the comments were not so flagrant as to warrant reversal. In determining whether inappropriate prosecutorial comments warrant reversal of a criminal conviction obtained in an otherwise fair proceeding, the court must consider the probable effect of the prosecution's comments in context, including defense counsel's conduct. *United States v. Young*, 470 U.S. 1, 11–12, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985). Viewed in context, the prosecutor's remarks did not mislead or prejudice the jury, and they were limited to responding to specific charges made by defense counsel during his closing argument. The prosecutor's comments, while deliberate, were made to rebut defense counsel's argument that the government's failure to

produce more than one cracl customer evidenced an unwillingness or inability to do its job. Defense counsel stated that there were "thousands of potential buyers ... you can round up," but that the government had only managed to produce one witness who had a grudge against Smith and had memory problems. J.A. at 250. Defense counsel continued, arguing that "the Government with unlimited power, unlimited power, can wield out any witness they want, they can call anybody they want, they can invest any amount of money they want to do surveillance...." *Id.* In this context, the prosecutor's statements about the difficulty in presenting crack addicts as witnesses against drug dealers were simply countering the defense counsel's contention that the government should have been able to produce addicts galore to testify on demand. *See Young*, 470 U.S. at 12–13 ("[I]f the prosecutor's remarks were 'invited.' and did no more than respond substantially in order to 'right the scale,' such comments would not warrant reversing a conviction.").

■ Third, when viewed in context, the prosecutor's suggestion. "That man knew what he was talking about," did not constitute improper vouching for Willie Robinson's credibility. Improper vouching generally involves either blunt comments stating a personal belief about a witness's credibility or comments that imply that the prosecutor has special knowledge, either of facts not before the jury or of the credibility and truthfulness of the witness. *United States v. Francis*, 170 F.3d 546, 550 (6th Cir.1999). In context, the remark neither states the prosecutor's personal belief in Robinson's credibility nor implies that the prosecutor knows something that the jury did not. Before briefly breaking away to address defense coun-

sel's suggestion that the government did a bad job because the only customer it produced was Robinson, the prosecutor began to counter defense counsel's suggestion that Robinson was "brain dead." The prosecutor stated

> Ladies and gentlemen, do you see a pattern here? Willie Robinson knows what he's talking about, he knows what color car, know's the man's nickname, he can I.D. him and everything else. He knows what he's talking about until he says, um, Buck was dealing drugs. That's the on—there's an exception. Okay. All of a sudden he doesn't know what he's talking about on that topic. . . .

J.A. at 254–55. The prosecutor did not say that he personally believed that Robinson was credible—he simply referred to evidence in the case to counter defense counsel's suggestion that Robinson was incapable of remembering anything.

Finally, given the evidence against Smith, the prosecutor's remarks did not seriously affect the fairness or integrity of his trial. One of Smith's cooperating co-defendants. Eric Joseph, testified extensively regarding his dealings with Smith at the course of the drug conspiracy. Robinson testified that he had purchased crack cocaine from Smith "numerous" times. Wiretaps recorded two strange conversations between Smith and co-defendant Lonnie Williams (the target of wiretaps) and two conversations between Joseph and Williams, in which they discussed a person named "Buck" (Smith's nickname). Joseph interpreted those conversations as concerning various drug transactions. The evidence of Smith's guilt was substantial, and the prosecutor's statements, even if improper, did not arise to the level of plain error.

**B. The record is not sufficiently developed to permit consideration of Smith's ineffective assistance of counsel claim.**

■ Because the current record does not permit the proper assessment of it, we decline to pass on Smith's claim that he received ineffective assistance of counsel when his attorney failed to request an adjournment of his sentencing until after more favorable sentencing guidelines went into effect. This court generally declines to review ineffective assistance of counsel claims on direct review, as the record is unlikely to be sufficiently developed to permit an assessment of the merits of such claims. *United States v. Aguwa,* 123 F.3d 418, 423 (6th Cir.1997). "This rule stems from the fact that a finding of prejudice is a prerequisite to a claim for ineffective assistance of counsel, and appellate courts are not equipped to resolve factual issues." *Id.* (citation omitted). A defendant should instead raise such claims in a post-conviction proceeding under 28 U.S.C. § 2255, where the parties have an opportunity to develop the record adequately. *Id.* It is appropriate to follow our general practice in this case.

## III. Conclusion

For the forgoing reasons, Smith's conviction and sentence are AFFIRMED.