**F I L E D**

**UNITED STATES COURT OF APPEALS**

**August 3, 2006**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA

Plaintiff-Appellee,

v.

GERALD WADE THOMAS, SR.,

Defendant-Appellant.

No. 05-5173

(N. D. Oklahoma)

(D.C. No. 04-CR-89-TCK)

**ORDER AND JUDGMENT**[*]

Before **HENRY**, **SEYMOUR**, and **EBEL**, Circuit Judges.

Gerald Wade Thomas, Sr., was convicted after a jury trial of (a) abusive sexual contact with a child under the age of 12 (a violation of 18 U.S.C. §§ 2244(a)(1) and (c) and 2246(3)); and (b) possession of a firearm after a former felony conviction (a violation of 18 U.S.C. §§ 922(g)(1) and 924(e)). The district court sentenced him to concurrent terms of imprisonment of 188 months on each count, followed by three years' supervised release.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10TH CIR. R. 36.3.

Mr. Thomas now challenges these convictions on two grounds, arguing that (1) the district court erred in allowing the prosecution to cross-examine an alibi witness regarding her failure to testify at a detention hearing; and (2) his firearm conviction violated his Sixth Amendment rights because the question of whether he had been convicted of a prior felony was not submitted to the jury. We are not persuaded by either argument, and we therefore affirm Mr. Thomas's convictions and sentences.

## I. BACKGROUND

The government's evidence as to the sexual abuse count was based largely on the testimony of TMC, a nine-year-old girl who, along with her brother Billy and another child, stayed with Mr. Thomas at his residence over spring break in 2004. TMC testified that, during one night over the break, she awoke and found Mr. Thomas in bed with her. He touched her on her shoulder, leg, and buttocks; took off her panties; and lifted up her shirt. He then held her down on her side by putting his hand on her hip. When Mr. Thomas placed his hands on her buttocks, she pushed his hands away, but he put them back on her. According to TMC, Mr. Thomas told her that if she told anyone, he would kill her.

TMC left Mr. Thomas's house the next morning. According to her brother Billy, TMC started to cry as they were driving away. After she told her family what had happened, a nurse practitioner examined her at a local hospital. The

examination revealed no evidence of vaginal or rectal penetration. However, the nurse practitioner observed a fresh bruise on TMC's right hip, tenderness in her lower back, and two bruises on each of her shins.

TMC also gave testimony supporting the firearm charge. She said that while she was helping Mr. Thomas chop wood, she saw him holding a long brown gun with a string tied to both ends. She added that she had seen two rifles at Mr. Thomas's house, each with a string tied onto it.

TMC's brother Billy gave similar testimony. He stated that during the spring break visit, he had seen Mr. Thomas carrying a rifle with a shoulder strap and that he believed that he had seen another rifle in Mr. Thomas's home. Mr. Thomas's brother Harold and his half-brother William also testified that they had seen Mr. Thomas carrying a rifle with a shoulder strap.

Finally, FBI Agent Dana Ward testified that she and marshals from the Cherokee Nation executed a search warrant on Mr. Thomas's home on April 12, 2004. After knocking on the front door, Agent Ward heard a sound near the back of the house and went to investigate. She saw a man wearing a green army jacket with a rifle slung over his shoulder. She yelled at the man to put the gun down, but, after telling her that she had no right to be on Indian land, the man threw the gun down and ran into the woods. Later that day, the agents found the rifle that the man had dropped. However, the fingerprints did not match Mr. Thomas's. Inside the residence, they found another firearm: a Mossberg shotgun with a sling.

Agent Ward further testified that, on November 17, 2004, she saw Mr. Thomas at the Cherokee Casino in Catoosa, Oklahoma. She recognized him as the man she had seen with the gun during the April 12, 2004 search, and Mr. Thomas was then arrested.

In his defense, Mr. Thomas called Julie Rhoden, the common-law wife of Mr. Thomas's son, Gerald Wade Thomas, Jr. Ms. Rhoden testified that over spring break in 2004, she and her children were living in the residence where the alleged offenses took place. According to Ms. Rhoden, Mr. Thomas was not living there at that time. Ms. Rhoden also testified that she had never met TMC or the other government witnesses.

On cross-examination, the prosecutor asked Ms. Rhoden about her attendance at an earlier proceeding, the pre-trial detention hearing for Mr. Thomas. Mr. Thomas's attorney objected "as to anything that happened at a detention hearing." Rec. vol. IV, at 251. However, the district court allowed the prosecutor to ask Ms. Rhoden whether she had reported the information about not seeing Mr. Thomas at the residence over the 2004 spring break. In particular, the prosecutor asked her whether she had "[stood] up at the back of the courtroom and raise[d] [her] hand and sa[id] judge, judge, I've got some evidence that I need to tell you about." Id. at 252. Ms. Rhoden responded that she had not done so because she did not know that she could. However, she added that, at the

conclusion of the detention hearing, she had informed Mr. Thomas's attorney about the alibi evidence.

During closing argument, the prosecutor returned to Ms. Rhoden's failure to come forward with information about Mr. Thomas's not living at the residence. He stated:

> On that issue, I want to talk to you about the defendant's witnesses, his common law daughter-in-law. Here we have this woman who says she would do anything to help Gerald [the defendant Mr. Thomas] and yet does nothing for well over a year to help him, despite being present at court hearings . . . .

Rec. vol. V, at 282. He added, "All the things that [Ms. Rhoden] said. I couldn't go get that evidence. She didn't tell me anything about it, that was the first time any of us had ever heard it." Id. at 283-84.

After hearing this evidence, the jury convicted Mr. Thomas on both counts.


## II. DISCUSSION

On appeal, Mr. Thomas argues that the district court erred in allowing the prosecutor to cross-examine Ms. Rhoden regarding her failure to volunteer information about his alibi at the detention hearing. He notes that Ms. Rhoden's alibi testimony was not relevant to the matter at issue at the detention hearing— whether Mr. Thomas should be detained pending trial. He adds that, as a lay person merely attending the detention hearing, she had no obligation to publicly

volunteer her alibi information to the court.  As a result, he concludes, the government's attempt to cross-examine her about her failure to volunteer the information unduly influenced the jury.

As to the firearm conviction, Mr. Thomas argues that the district court violated his Sixth Amendment rights by finding that he had been convicted of a prior felony without submitting the issue to a jury.

### A.  Cross-Examination of the Alibi Witness

Although Mr. Thomas characterizes the prosecutor's cross-examination of Ms. Rhoden as "improper," Aplt's Br. at 9, neither at trial nor in his appellate brief has he provided a more specific basis for his objection.  He now cites decisions involving prosecutors' misstating the terms of a stipulation, commenting on a defendant's failure to testify, and vouching for witnesses.  See id. at 15-19 (citing United States v. Mastrangelo, 172 F.3d 288 (3d Cir. 1999); United States v. Cotnam, 88 F.3d 487 (7th Cir. 1996); United States v. Kerr, 981 F.2d 1050 (9th Cir. 1992)).  This case does not involve those kinds of prosecutorial misconduct.

However, in examining the proper scope of the cross-examination of an alibi witness regarding a delay in coming forward, several decisions have applied Rule 403 of the Federal Rules of Evidence.  See, e.g., United States v. Aguwa, 123 F.3d 418, 420 (6th Cir. 1997) (noting that the defendant contended "that the

-6-

prosecution's line of questioning and argument was improper because no meaningful inference can or should be drawn from the mere fact that a witness may not have immediately come forward and revealed the existence of an alibi for a defendant" and concluding that "although the defendant does not necessarily frame his argument in this fashion, he is claiming that such evidence is inadmissible under Federal Rule of Evidence 403 because its probative value is outweighed by other considerations"); United States v. Johns, 734 F.2d 657, 664 (11th Cir. 1984) (evaluating a challenge to cross-examination regarding the diligence of an alibi witness under Fed. R. Evid. 403). We are persuaded by these decisions that Rule 403 offers the appropriate framework for analyzing Mr. Thomas's objection to the cross-examination of Ms. Rhoden.

Under that framework, our review of the trial judge's decision to allow the prosecutor's questioning is quite deferential. Generally, "[o]n cross-examination, it is within the trial judge's discretion to exclude evidence." Ewing v. Winans, 749 F.2d 607, 616 (10th Cir. 1984). In balancing probative value and prejudice under Fed. R. Evid. 403, the district court is afforded the same discretion. See Deters v. Equifax Credit Info. Servs.,Inc., 202 F.3d 1262, 1274 (10th Cir. 2000) (noting that decisions whether to admit or exclude evidence under Rule 403 are reviewed for an abuse of discretion because the district court is "clearly in a superior position to perform this analysis").

Morever, "[a] non-constitutional error, such as a decision whether to admit or exclude evidence, is considered harmless 'unless a substantial right of [a] party is affected.'" United States v. Charley, 189 F.3d 1251, 1270 (10th Cir. 1999) (quoting Fed. R. Evid. 103(a)). An error affects a substantial right when it has a "substantial influence on the outcome or leaves one in 'grave doubt' as to whether it had such effect." United States v. Rivera, 900 F.2d 1462, 1469 (10th Cir. 1990) (en banc) (quoting Kotteakos v. United States, 328 U.S. 750, 765 (1946)). "The government bears the burden to show that a nonconstitutional error is harmless by a preponderance of the evidence." United States v. Stiger, 413 F.3d 1185, 1190 (10th Cir. 2005).

Applying those standards here, we discern some merit in each party's position. As the government observes, a line of cases allows the government to cross-examine an alibi witness about his or her delay in coming forward with the alibi. See, e.g., Aguwa, 123 F.3d at 420-21 ("Under the circumstances presented in this case, we find that the district court did not abuse its discretion, because we are convinced that the witness' delay in providing an alibi for her husband is an appropriate subject of inquiry."); United States v. Laury, 985 F.2d 1293, 1305-06 (5th Cir. 1993) ("The prosecutor's comments regarding the failure of the witnesses to come forward sooner with [the defendant's] alibi was a permissible attack on their credibility."); Johns, 734 F.2d at 664 (stating "[t]hat anyone, defendant or witness, fails to present a defendant's alibi to law enforcement at the

earliest time possible has some logical negative reflection on the credibility of the alibi defense"). However, as Mr. Thomas observes, the prosecutor here did more than merely challenge Ms. Rhoden's delay in reporting the alibi.

In particular, the prosecutor's questioning suggested that Ms. Rhoden was not a credible witness because she had not interrupted the detention hearing by volunteering her alibi information to the prosecutor and the judge. The government cites no authority indicating that a witness has a duty to report information in this context. As Mr. Thomas observes, the information offered by Ms. Rhoden was not relevant to the issue addressed at the detention hearing—whether Mr. Thomas should be detained pending trial.

Nevertheless, even assuming that the district court abused its discretion in allowing the prosecutor to cross-examine Ms. Rhoden about her failure to report the alibi information at the detention hearing, we conclude that this error was harmless. See Charley, 189 F.3d at 1270. As to the sexual assault charge, the jury had the opportunity to assess the credibility of TMC, and her testimony was corroborated by the nurse practitioner's testimony regarding the bruise on her hip and, to some extent, by family members' testimony about her reporting the assault. As to the firearm charge, five witnesses testified that they saw Mr. Thomas carrying a gun with a sling.

Moreover, we note that after the prosecutor's cross-examination of Ms. Rhoden, Mr. Thomas's attorney did not seek to rehabilitate her by asking about

her reporting the alibi information at the close of the detention hearing. His failure to do so undermines Mr. Thomas's assertion of prejudice. See Shultz v. Rice, 809 F.2d 643, 653 (10th Cir. 1986) (noting that a party's opportunity to rehabilitate a witness undermined the allegation of prejudice); United States v. Taglione, 546 F.2d 194, 197 (5th Cir. 1977) (concluding that a prosecutor's closing remarks were not prejudicial in part because the defendant's attorney "had ample opportunity for an effort to rehabilitate in his own closing remarks").

Accordingly, we conclude that the additional impeachment of Ms. Rhoden afforded by the prosecutor's cross-examination neither had a "'substantial influence' on the outcome" nor leaves us "in 'grave doubt' as to whether it had such effect." Rivera, 900 F.2d at 1469 (quoting Kotteakos, 328 U.S. at 765). Nor did the prosecutor's closing argument affect the fairness of the trial. See United States v. Young, 470 U.S. 1, 11 (1985).

## B. Firearm Charge

Mr. Thomas also challenges his conviction on the 18 U.S.C.§§ 922(g)(1) and 924(e) firearm charge, noting that the fact of his prior convictions was not submitted to a jury and contending the district court's failure to do so violated his Sixth Amendment rights.

Mr. Thomas concedes that this argument is foreclosed by Supreme Court precedent: Almendarez-Torres v. United States, 523 U.S. 224 (1998). However, he predicts that Almendarez-Torres will be overruled.

Because we are bound to follow Almendarez-Torres, Mr. Thomas cannot prevail. "This court has held post-[United States v. Booker, 543 U.S. 220 (2005)] that the existence and classification of prior convictions used to enhance a defendant's sentence need not be charged in the indictment and submitted to a jury." United States v. Davis, 437 F.3d 989, 998 (10th Cir. 2006); see also United States v. Moore, 401 F.3d 1220, 1224 (10th Cir. 2005) ("[W]e are bound by existing precedent to hold that the Almendarez-Torres exception to the rule announced in Apprendi and extended to the Guidelines in Booker remains good law. We therefore conclude that the government need not charge the 'fact' of a prior conviction in an indictment and submit it to a jury.") (internal citations omitted).

### III. CONCLUSION

Accordingly, we AFFIRM Mr. Thomas's convictions and sentences.


Entered for the Court,


Robert H. Henry
Circuit Judge

-11-