UNITED STATES of America,
Plaintiff–Appellee,

v.

Deshun WELLS, Defendant–Appellant.

No. 02–3419.

United States Court of Appeals,
Sixth Circuit.

June 4, 2004.

Joseph P. Schmitz, Asst. U.S. Attorney, U.S. Attorney's Office, Cleveland, OH, for Plaintiff–Appellee.

Jaime P. Serrat, R. Brian Moriarty, R. Brian Moriarty, LLC, Cleveland, OH, for Defendant–Appellant.

Before KENNEDY, ROGERS, and COOK, Circuit Judges.

KENNEDY, Circuit Judge.

Defendant Deshun Wells ("defendant") was convicted by a jury of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), and of possessing with the intent to distribute approximately forty-six grams of cocaine base ("crack cocaine") in violation of 21 U.S.C. § 841(a)(1). The district court sentenced defendant to 250 months of imprisonment, followed by 8 years of supervised release. Defendant appeals the district court's denial of his pre-trial motion to suppress certain evidence flowing from police officers traffic stop of his vehicle. Defendant also appeals his judgment of conviction and sentence on several grounds. For the following reasons, we AFFIRM the district court's denial of defendant's suppression motion as well as the judgment of conviction and defendant's sentence.

### I. Suppression Motion

Defendant appeals the district court's denial of his motion to suppress the crack cocaine and $975 that police officers, following a traffic stop of defendant's vehicle, seized from his vehicle and his person, respectively. We review the district court's legal conclusions in a suppression hearing *de novo* and its factual findings in a suppression hearing for clear error. *United States v. Smith*, 263 F.3d 571, 581–82 (6th Cir.2001); *United States v. Avery*, 137 F.3d 343, 348 (6th Cir.1997) (holding that the district court's determination as to whether the facts establish an unconstitu-

tional seizure under the Fourth Amendment is a question of law that we review *de novo*). When considering the denial of a suppression motion, we must view the evidence in the light most favorable to the government. *United States v. Wellman, Jr.,* 185 F.3d 651, 654–55 (6th Cir.1999).

After holding an evidentiary hearing on defendant's suppression motion, the district court found the following facts. On November 10, 2000, at approximately 4:00 a.m., Cleveland Police Officers David Borden ("Borden") and Matthew Craska ("Craska") stopped the vehicle that defendant was driving for operating without its headlights on in violation of Ohio law. Upon exiting their squad car, Borden and Craska approached the passenger's side and driver's side of the vehicle, respectively, Craska advised defendant, the vehicle's sole occupant, of the traffic violation triggering the stop. Upon being asked to do so, defendant gave Craska his driver's license and proof of insurance. After Craska asked defendant if the vehicle's headlights worked, defendant replied in the affirmative. While Craska was conferring with defendant. Borden examined the vehicle's interior with the aid of a flashlight. Approximately thirty seconds after he and Craska approached defendant's vehicle, Borden observed, through the front passenger's side window, a clear plastic bag that contained chunks of an off-white substance lying on the "center hump" of the floor between the two front seats. Based upon his training in and experience with narcotics detection, Borden identified the substance as crack cocaine. Immediately upon observing the crack cocaine in plain view, Borden directed Craska to order defendant out of the vehicle. While Borden intended to arrest defendant for violating Ohio drug laws, he did not convey this intent to Craska for fear that defendant, upon learning of his arrest, might resist the officers' attempts to handcuff him and

to secure him in their patrol car. Per Borden's instruction, Craska ordered defendant to exit the vehicle. Around that time, defendant had turned on the vehicle's headlights to show Craska that they worked.

Upon being ordered to exit the vehicle, defendant, however, initially refused to do so on the ground that he had already produced both his driver's license and proof of insurance. After Craska. once again, demanded that he exit the vehicle, defendant hesitated, and then placed his right hand inside his jacket. Fearing that defendant might have been reaching for a weapon, Craska assumed a defensive stance, and placed his hand on his firearm so as to be able to draw it readily. Defendant, however, "paused for a second, sighed, shook his head." and then exited the vehicle. As Craska escorted defendant to the rear of his vehicle, defendant again protested that he had already produced both his driver's license and proof of insurance. Borden instructed defendant to place his hands on the vehicle so that the officers could conduct a pat-down of his person. After some delay, defendant placed his right hand on the vehicle. However, defendant insisted on maintaining his left arm close to his side. Patting down defendant's right side, Borden recovered a wad of cash in the amount of $975. When Borden forcibly attempted to extend defendant's left arm so as to be able to conduct a pat-down of his left side, defendant pushed off of the vehicle and attempted to flee the scene. Defendant ran approximately ten to twelve feet before the officers tackled him. The officers, however, were unable to subdue or handcuff defendant, and a lengthy altercation ensued.

Throughout the struggle, the officers repeatedly advised defendant to stop resisting arrest. At some point during the me-

lee.  Borden observed defendant reach his right hand into his clothing as if to access a concealed weapon in his waistband, and prevented him from doing so.  As defendant broke free from the "bear hug" in which Borden had placed him.  Craska, from a distance of approximately three to four feet, observed a black, steel, full-size semi-automatic pistol fall from the left side of defendant's waistband onto the ground.  As the officers wrestled defendant on the ground.  Borden observed the semi-automatic pistol in the area where he and defendant had previously struggled, approximately ten feet away.  Both Borden and Craska knew that the pistol, based upon its color, was not a firearm that Cleveland police officers were issued or were authorized to carry Because the officers were unable to subdue defendant, they called for back-up assistance.  After several police units arrived at the scene and with the aid of three or four police officers.  Borden and Craska were finally able to subdue and handcuff defendant.

Upon recovering the firearm from the ground, Borden ascertained that it was a loaded, Colt .45 caliber pistol.  After conferring with Borden at the scene.  Officer Robert Albertini ("Albertini") observed and seized the clear plastic bag of crack cocaine lying on "the floorboard hump" between the front seats of defendant's vehicle.  Along with issuing defendant a traffic citation for driving his vehicle without its headlights, the officers placed defendant under custodial arrest for assaulting a police officer, carrying a concealed weapon, and violating Ohio drug laws.  Scientific analysis later confirmed the off-white

substance seized from defendant's vehicle as crack cocaine.

■ Defendant challenges the district court's denial of his suppression motion on several grounds.  First, defendant contends that, even though the initial traffic stop was valid,[1] it ripened into an unconstitutional seizure when the officers, without adequate additional justification to do so, continued to detain defendant after the completion of the traffic stop's initial purpose, See United States v. Hill, 195 F.3d 258, 264 (6th Cir.1999) (holding that a police officer cannot continue to detain a motorist after the officer has completed the initial purpose of the traffic stop unless something that occurred during the stop gave the officer the requisite additional justification to do so).  Specifically, defendant contends that the traffic stop's initial purpose ended when the officers verified defendant's license and registration, and that the officers subsequently lacked the requisite justification beyond this initial purpose to order defendant out of the vehicle and to search it.

However, when viewed in the light most favorable to the government, the evidence establishes that the traffic stop's initial purpose had not yet ended at the time that Borden observed the crack cocaine in plain view in defendant's vehicle.  Borden testified that, within approximately thirty seconds of approaching the vehicle and while Craska was still conferring with defendant about the traffic violation.  Borden observed what he reasonably believed to be crack cocaine lying in plain view on the "center hump" between the vehicle's two

1.  As defendant concedes and as the district court correctly found, defendant was, in fact, operating his vehicle at 4:00 a.m. without his headlights on in violation of Ohio law, and, thus, Borden and Craska had probable cause to believe that he had committed a traffic violation so as to stop his vehicle lawfully. See United States v. Freeman, 209 F.3d 464, 466 (6th Cir.2000) (holding that a police officer may lawfully stop a motorist who he has probable cause to believe has committed a traffic violation).

front seats.[2]  Moreover, Craska testified that Borden directed him to order defendant to exit the vehicle around the time that defendant, upon being asked by Craska whether the vehicle's headlights worked, turned on the headlights to demonstrate that they did, in fact, work.  We note that the record also suggests that, at the time that Borden observed this contraband, dispatch had not yet returned the check on defendant's license plate, and the officers had not yet issued defendant a traffic citation.  See Wellman, 185 F.3d at 656 (holding that the police officer "lawfully asked [the] defendant to sit in the squad car while he wrote a courtesy citation and performed record checks of his driver's license and registration" as it was within the scope of the traffic stop for speeding); United States v. Bradshaw, 102 F.3d 204 (6th Cir.1996) (holding that the police officer "could lawfully detain ... [defendant in the back of the squad car] until he had finished performing radio checks and issuing the citation" because it was "well within the bounds of the initial stop"); Hill, 195 F.3d at 269 (holding that a driver's license check was within the original scope of a traffic stop based upon a traffic viola-

tion).  Borden's observation of the crack cocaine in plain view in defendant's vehicle, while defendant was being lawfully detained pursuant to the traffic stop, afforded adequate justification to detain defendant beyond the completion of the traffic stop's initial purpose.[3]  See Horton v. California, 496 U.S. 128, 136–37, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990) (holding that, under the "plain view" doctrine, a law enforcement officer may seize an object if: 1) the officer observes it from a lawful vantage point; 2) the officer has a lawful right of physical access to it; and 3) the object's incriminating character must be "immediately apparent").  Indeed.  Borden's plain-view observation afforded the officers probable cause both to search defendant's vehicle to retrieve the contraband and to arrest defendant for violating the state drug laws.  See Ornelas v. United States, 517 U.S. 690, 693, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996) (upholding a warrantless search of a car solely on the basis of probable cause); United States v. Watson, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976) (upholding a warrantless arrest in a public place solely on the basis of probable

2.  Defendant, on appeal, attacks the credibility of this testimony on the ground that Borden had previously testified, at a parole revocation hearing, that he observed the crack cocaine "under the seat," and, thus, that the crack cocaine was not in plain view.  When defendant, at the suppression hearing, attempted to impeach Borden with this purported prior inconsistent statement, Borden disclaimed ever having testified that the crack cocaine was "under the seat," and attributed to court reporter error the existence of any transcribed testimony to that effect.  We note that, at the suppression hearing, defendant acknowledged that the tape recording at the parole revocation hearing from which the court reporter transcribed Borden's testimony was inaudible in many places.  The district court, having had the opportunity to observe Borden's demeanor while testifying-including his reaction to defendant's attempted impeachment-, found credible Borden's testimo-

ny that the crack cocaine was lying in plain view on the "center hump" between the vehicle's two front seats.  We also note that at least two other officers corroborated this testimony.  Having found no compelling reason to do so, we decline defendant's invitation to overturn the district court's determination that Borden's plain-view testimony is credible.  See Peveler v. United States, 269 F.3d 693, 702 (6th Cir.2001) ("We are generally reluctant to set aside credibility determinations made by the trier of fact, who has had the opportunity to view the witness[es] on the stand and [to] assess ... [their] demeanor.").

3.  Defendant offered no evidence to support his allegation that it was the pornography he was watching rather than the crack they could see in the car that prompted the officers to order him out of his vehicle.

cause). Thus, Craska certainly had sufficient justification to order defendant out of the vehicle, either pursuant to the routine traffic stop or to pursue these legitimate ends. *See Pennsylvania v. Mimms*, 434 U.S. 106, 111, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977) (holding that a police officer may order the driver of a lawfully stopped vehicle to exit that vehicle as a matter of course). To the extent that defendant, on appeal, challenges the officers' search of his person on the ground that it occurred while defendant was being unlawfully detained, such a claim must fail. Thus, we AFFIRM the district court's denial of defendant's suppression motion.

## II. Sufficiency of the Evidence

■ Defendant appeals his judgment of conviction on the ground that there was insufficient evidence to sustain his convictions. In reviewing an appeal on the ground of insufficient evidence, we must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (applying standard in habeas corpus context); *United States v. Vincent*, 20 F.3d 229, 233 (6th Cir.1994) (applying same standard on direct review). We must also "draw all available inferences and resolve all issues of credibility in favor of the jury's verdict." *United States v. Maliszewski*, 161 F.3d 992, 1006 (6th Cir.1998). Moreover, "[a] defendant claiming insufficiency of the evidence bears a very heavy burden." *Id.* at 1005.

Defendant challenges the sufficiency of the evidence to sustain his conviction for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) only as to the element of his possession of a firearm.

First, defendant points to Borden's testimony that he first saw the pistol when it was lying on ground near the location where he and defendant had been struggling. However, as defendant acknowledges, Craska testified that he observed the pistol fall from the left side of defendant's waistband from a distance of only four feet and under adequate lighting conditions. Second, presumably to support his defense theory that the officers planted the pistol at the scene, defendant underscores that, although several officers testified that they observed the firearm on the ground, they did not immediately secure it upon arriving at the scene or before securing defendant; in other words, defendant is implying that, had the pistol really been lying on the ground, the officers would have immediately attempted to secure it. Yet, in determining the sufficiency of the evidence, we have no authority to revisit a credibility dispute that the jury has resolved in the government's favor. *See Maliszewski*, 161 F.3d at 1006. Third, defendant argues that the government was unable to retrieve any discernible fingerprints from the pistol, and the government failed to establish to whom the firearm legally belonged. However, as a government expert testified, the vast majority of recovered firearms do not contain any identifiable fingerprints. Moreover, the *legal* ownership of the pistol is neither determinative of nor particularly relevant to whether defendant, a felon whom the law proscribes from possessing a firearm, actually possessed it.

Rather, we find that, after resolving all credibility disputes in favor of the jury's verdict, a rational jury could conclude that defendant possessed a firearm beyond a reasonable doubt. In particular, the following evidence is more than sufficient to sustain that conclusion: 1) Craska's testimony that defendant, upon being ordered out of the vehicle, hesitated and placed his

hand inside his jacket; 2) Borden's testimony that defendant attempted to prevent Borden from patting down the left side of his person: 3) Borden's testimony that he observed defendant reach his hand into his clothing as if to access a concealed weapon in his waistband: 4) Craska's testimony that he observed the pistol fall from the left side of defendant's waistband onto the ground: and 5) Borden's testimony that he observed the pistol in the area where he and defendant had previously struggled. Moreover, we note that defendant's possession of a large sum of cash on his person and forty-six grams of crack cocaine in his vehicle would certainly explain why defendant felt the need to possess the pistol.

■ Defendant purports to challenge the sufficiency of the evidence as to his conviction for possessing with the intent to distribute approximately forty-six grams of crack cocaine in violation of 21 U.S.C. § 841(a)(1). Yet, the only argument that defendant makes that could possibly bear upon this challenge is his contention that Borden testified inconsistently about the location of the crack cocaine in the vehicle—whether it was lying between the vehicle's two front seats or under the front seat.[4] As we have previously held, however, we cannot question a credibility dispute that the jury has resolved in the government's favor in determining a sufficiency-of-the-evidence claim. *See Maliszewski,* 161 F.3d at 1006. Thus, we AFFIRM the judgment of conviction.

### III.  Sentencing Issues

We review a district court's interpretation of a sentencing guideline *de novo, United States v. Adu,* 82 F.3d 119, 124 (6th Cir.1996), and its factual determinations underlying an application of a sentencing guideline for clear error. *United States v. Jackson–Randolph,* 282 F.3d 369, 390 (6th Cir.2002). We review for clear error a district court's determination of whether a defendant has accepted responsibility for his offenses so as to be entitled to a sentence reduction under United States Sentencing Guideline ("U.S.S.G.") § 3E.1.1(a). *United States v. Price,* 258 F.3d 539, 547 (6th Cir.2001). We review for clear error a district court's factual determination of whether a defendant's prior convictions constituted "related cases" under U.S.S.G. § 4A1.2(a)(2). *United States v. Odom,* 199 F.3d 321, 323 (6th Cir.1999) (holding that we review for clear error a district court's factual determination as to whether prior cases were related or consolidated for sentencing under U.S.S.G. § 4A1.2(a)(2), and that we give the court "due deference" in its application of the Guidelines to that determination). A factual finding is clearly erroneous when, though there is evidence to support the finding, the reviewing court is "left with the definite and firm conviction that a mistake has been committed." *United States v. Ables,* 167 F.3d 1021, 1035 (6th Cir.1999).

■ Defendant appeals the district court's determination that defendant had not accepted responsibility for his offenses so as to be entitled to a sentence reduction under U.S.S.G. § 3E1.1(a).[5] Section

---

**4.** While defendant, in his brief here, simply asserts, without any clarification or substantiation, that "there is absolutely no evidence establishing the necessary element of intent," defendant has failed to preserve this issue for review by failing to present any meaningful argument on it. *See Sommer v. Davis,* 317 F.3d 686, 691 (6th Cir.2003) (holding that a

party may abandon an issue on appeal by failing to present any argument on it in his brief).

**5.** Sentencing calculations relied upon the 2001 edition of the United States Sentencing Guidelines.

3E1.1(a) provides for a two-point reduction to a defendant's base offense level where he "clearly demonstrates acceptance of responsibility for his offense." Commentary to § 3E.1.1 provides that the acceptance-of-responsibility sentence reduction "is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse." U.S.S.G. § 3E1.1, comment. (n.2) (noting that conviction by trial "does not automatically preclude a defendant" from receiving the reduction). Rather, a defendant who exercises his right to trial may properly receive an acceptance-of-responsibility sentence reduction where he exercised that right only so as to challenge the constitutionality of the applicable law, whether on its face or as applied-not so as to contest his factual guilt. *Id.; see United States v. Mahan,* 190 F.3d 416, 427 (6th Cir.1999).

Defendant argues that, in exercising his constitutional right to a trial and putting the government to its burden of proof, he did not disclaim responsibility for his offenses. Rather, according to defendant, he affirmatively accepted such responsibility when he declined to testify on his behalf and when his counsel declined to present an opening statement. It is true that defendant never contested his factual guilt at trial by virtue of either his testimony or his counsel's opening statement, as defendant never testified and his counsel never made such a statement, arguably for strategic reasons. Defendant, nevertheless, contested his factual guilt throughout his trial by virtue of the theory of defense that he presented-that Borden and Craska planted the pistol at the scene and the crack cocaine in defendant's vehicle in order to cover up their racially-motivated use of excessive force against defendant. In support of this theory, defendant called an expert witness who testified that the pistol did not contain any discernible fingerprints, including defendant's, and called another witness who testified that she observed Borden and Craska beating defendant even though he was not resisting arrest, and that she never observed a firearm on the ground. Moreover, we note that defendant consistently contested his factual guilt before trial, and declined to discuss the factual events underlying that guilt during a pre-sentence investigative interview. The district court did not clearly err in finding that defendant had not accepted responsibility for his offenses so as to be entitled to a sentence reduction under U.S.S.G. § 3E1.1(a).

■ Defendant also appeals the district court's determination, under U.S.S.G. § 4A1.2(a)(2), that defendant's prior sentences were not "related cases" so as to constitute only one prior sentence for purposes of calculating defendant's criminal history category. Section 4A1.2(a)(2) provides, in relevant part: "Prior sentences imposed in unrelated cases are to be counted separately. Prior sentences imposed in related cases are to be treated as one sentence...." Application Note 3 to § 4A1.2 explains the term "related cases" as follows:

> Prior sentences are not considered related if they were for offenses that were separated by an intervening arrest (*i.e.,* the defendant is arrested for the first offense prior to committing the second offense). *Otherwise,* prior sentences are considered related if they resulted from offenses that (A) occurred on the same occasion. (B) were part of a single common scheme or plan, or (C) were consolidated for trial or sentencing.

U.S.S.G. § 4A1.2. comment. (n. 3) (emphasis added). Because the record establishes that each of the offenses underlying defen-

dant's prior sentences was separated by an intervening arrest-a fact which defendant does not dispute-, these prior sentences are automatically precluded from being considered "related cases," as application note 3 to § 4A1.2 makes clear.[6] The district court did not clearly err in determining that defendant's prior sentences were not "related cases" under § 4A1.2 (a)(2). In sum, we AFFIRM defendant's sentence.

### IV.  Additional Claims

■  On appeal, defendant contends, for the first time, that his trial counsel rendered ineffective assistance in violation of the Sixth Amendment when he failed to direct an independent expert to analyze the narcotics seized from defendant's vehicle.  However, as the Supreme Court has recognized, it is preferable for a litigant to bring a Sixth Amendment claim of ineffective assistance of counsel on collateral review in a motion under 28 U.S.C. § 2255 than to bring such a claim on direct review.  *Massaro v. United States,* 538 U.S. 500, 123 S.Ct. 1690, 1694, 155 L.Ed.2d 714 (2003); *accord United States v. Aguwa,* 123 F.3d 418, 423 (6th Cir.1997).  The Supreme Court reasoned:

> When an ineffective-assistance claim is brought on direct appeal, appellate counsel and the court must proceed on a trial record not developed precisely for the object of litigating or preserving the claim and thus often incomplete or inadequate for this purpose.  Under *Strick-*

*land v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 ... (1984), a defendant claiming ineffective counsel must show that counsel's actions were not supported by a reasonable strategy and that the error was prejudicial.  The evidence introduced at trial, however, will be devoted to issues of guilt or innocence, and the resulting record in many cases will not disclose the facts necessary to decide either prong of the *Strickland* analysis.

*Id.* Consequently, appellate courts generally will not consider claims of ineffective assistance of counsel on direct review.  *See Aguwa,* 123 F.3d at 423.  Because the record here does not afford an appropriate basis upon which to deviate from this customary practice, we decline to consider defendant's Sixth Amendment claim on direct review.  Defendant's remedial avenue for his alleged Sixth Amendment violation is a § 2255 post-conviction proceeding.

Defendant, who is represented by counsel, filed a *pro se* supplemental brief in which he claims that the prosecutor knowingly introduced false evidence at defendant's trial and that this instance of prosecutorial misconduct violated his right to a fair trial.  In particular, defendant contends that the prosecutor knew that the arresting officers had planted the drugs and firearm in the vehicle and on the scene, respectively, and yet permitted them to testify otherwise.  In support, defendant contends that, while an undated police report does mention the officers'

---

**6.** Defendant's sole contention on this issue is that his prior sentences were "related cases" because the offenses underlying these sentences were consolidated for purposes of arraignment, plea, and sentencing, and occurred "close in time" to each other.  However, upon finding that defendant's prior sentences fall within application note 3's blanket proscription against treating prior

sentences as "related cases," we may not proceed to inquire into whether defendant's prior sentences would "otherwise" be considered related.  Rather, as application note 3's structure and language makes clear, we may conduct this latter inquiry only upon determining, as a threshold matter, that an intervening arrest did not separate a defendant's prior sentences.

recovery of the firearm from the scene, the original, dated police report does not. However, the record belies such a claim. Rather, the original police report, dated November 11, 2000, the date of the challenged traffic stop of defendant's vehicle, not only cites defendant with a weapons charge but also depicts, in its factual recitation, the officer's recovery of the firearm from the scene. While a subsequent police report, dated November 24, 2000. does not recite the officer's recovery of the firearm from the scene, it does, however, cite defendant with a weapons charge. Because defendant, by virtue of his reliance upon these police reports, has failed to demonstrate that the arresting officers' testimony was, in fact, false, petitioner's prosecutorial misconduct claim must fail. *See United States v. Hawkins*, 969 F.2d 169, 176 (6th Cir.1992) (holding that, in order to establish a prosecutorial misconduct claim based upon the prosecutor's knowing admission of false testimony, the defendant must show that the testimony was material, that the testimony was, in fact, false, and that the prosecution knew that it was false).

For the preceding reasons, we AFFIRM the district court's denial of defendant's suppression motion as well as the judgment of conviction and defendant's sentence.