NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0622n.06
Filed: August 23, 2006

Case No. 04-6188

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| LORENZO HIBBLER, | ) | DISTRICT OF TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE: BATCHELDER, CLAY and MCKEAGUE, Circuit Judges.

ALICE M. BATCHELDER, Circuit Judge. Lorenzo Hibbler ("Hibbler") was convicted by a jury on one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). The district court sentenced Hibbler to 120 months in prison, to be followed by three years of supervised release. On appeal, Hibbler argues that his conviction should be overturned because the district court erred in denying Hibbler's *Batson* challenge where the government proffered the age of one black juror as the reason for its exercise of a peremptory challenge to excuse that juror. Hibbler also challenges the sufficiency of the evidence on which the jury relied to convict him, and argues that he was improperly sentenced based on a mandatory guidelines scheme. We will affirm Hibbler's conviction, but because we agree that the district court committed prejudicial error in sentencing Hibbler, we will remand the case for re-sentencing.

**I. Procedural and Factual History**

**A. July 25, 2003**

Memphis Police Department Officer Russell Woolley ("Woolley") was patrolling the West Precinct of the city on July 25, 2003, assisting other officers in looking for a suspect in a robbery committed about an hour earlier. Woolley spotted a black male wearing black shorts and a black shirt with silver or white around the collar, which matched the description of the robber. Woolley recognized this individual as one for whom Woolley had been looking for several months because he was wanted on several outstanding warrants. Woolley turned his car around to pursue the suspect, who immediately fled on foot down the middle of the street. Woolley saw him pull from the front of his shorts what appeared to be a weapon, which he carried in his right hand as he ran.

The suspect ran into an alley, and Woolley pulled his patrol car into the alley behind him, cornering the suspect against a fence with the patrol car. Woolley could see a pistol grip protruding from the waist of the suspect's pants, and, in order to prevent him from escaping and from using the gun, Woolley repeatedly slammed the patrol car door against the suspect's arm. The patrol car – which was still in drive – lurched forward, and the suspect was eventually thrown to the ground, landing on his stomach with his hands beneath him. Woolley held him in that position at gunpoint until backup arrived.

Officer Derrick Blake ("Blake"), the first officer to respond to the scene, recovered the gun from the front of the suspect's pants and placed him in handcuffs. Officer Samuel McMinn ("McMinn") arrived at the scene after receiving a call stating that an officer had a suspect in custody. McMinn saw Blake pull the gun from the suspect's pants; McMinn took the gun, put it in a gun box, and ran the serial number through the NCIC database.

2

As a result of this incident, a grand jury indicted Hibbler on one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). Hibbler pled not guilty and a one-day trial was held on May 12, 2004.

**B. Jury Selection**

The 33-person venire from which the jury was seated consisted of 22 whites, 10 blacks, and one person who identified himself as "Hispanic or Latino." Of the first twelve potential jurors, five were excused on peremptory challenges. Three of those – including a 24-year-old black female – were challenged by Hibbler's attorney. The government challenged two black males, aged 27 and 57. The excused jurors were replaced by Candice Harris, a black 23-year-old; Robert Holmes; a black 44-year-old; Rebekah L. Ray, a white 24-year-old, and two white women, aged 56 and 40. Harris, a full-time college student studying English and pre-law, was single, and had no work experience. Ray, a graduate student pursuing a degree in counseling, had been working for two months at Starbucks, and had formerly been employed by a law firm as a receptionist. Hibbler exercised peremptory challenges against Ray and the 40-year-old white woman. The government peremptorily challenged Harris and Holmes. Because at that point the government had exercised peremptory challenges only to black jurors, Hibbler raised a *Batson* challenge to the dismissal of Harris and Holmes.

Counsel for the government stated on the record her reasons for challenging both Holmes and Harris. She explained that Holmes's wife worked for the Shelby County Sheriff's Department, and that an officer who would be testifying at trial knew Holmes's wife personally. This officer believed that Holmes might be biased against Memphis Police Department officers because of some animus on the part of the Shelby County Sheriff's Department against the Memphis Police

3

Department. Counsel challenged Harris because "she's very young, very unexposed. I would have struck Ms. Ray as well if I had enough strikes, just very young unexposed [sic], Your Honor. That is basically it. She had no work experience other than being in school."

Hibbler's attorney argued that the age of a juror is not a valid basis for exercising a strike, but the government noted that there is no case law supporting that proposition, and that only race and gender were invalid reasons for striking jurors. The district court overruled Hibbler's objection, stating that it believed "the explanation given by the government is sufficient."

## C. Trial Testimony

Officers Woolley, Blake, and McMinn all testified during the government's case-in-chief. Woolley testified to the circumstances of the chase and identified Hibbler as the suspect he had pursued and a .38 caliber Rossi pistol as the gun that Hibbler had tucked into his pants. Woolley said that the entire chase had taken only 15 to 30 seconds, and that it had taken place between 9:55 a.m. and 10:00 a.m., near the end of his 12-hour shift, which had started at 11:30 the previous evening. Blake was unable to identify Hibbler as the suspect from whom he took the gun, but testified that the Rossi pistol in evidence was the gun he recovered. He added that his shift was just beginning and Woolley's shift was just ending when the arrest was made. McMinn testified that he received a call at about 9:45 a.m. that a suspect was in custody; that he went to the scene and saw Hibbler in the custody of Woolley and Blake; and that he saw Blake take the gun from Hibbler's pants.

Hibbler made a motion for judgment of acquittal at the close of the government's proof, which the district court denied. Hibbler's stepfather, Wilbur Chillis, then testified that he had talked to Hibbler sometime between 9 a.m. and 10 a.m. on the day Hibbler was arrested, and saw him leave

the house on foot, but did not see a gun in Hibbler's waistband. Hibbler also called Robin Hulley of the Memphis Police Department, who testified that there were no identifiable fingerprints found on the gun. However, she acknowledged that it was rare to find fingerprints of usable value on a gun. The jury returned a guilty verdict that afternoon.

## D. Sentencing

The Pre-Sentence Investigation Report ("PSR") set the base offense level at 24 under U.S.S.G. § 2K2.1(a)(2), and added four levels for use of the firearm in connection with another felony offense. *See* U.S.S.G. 2K2.1(b)(5). The PSR concluded that Hibbler was an Armed Career Criminal under 18 U.S.C. § 924(e) because of his prior felony convictions and juvenile adjudications for aggravated assault and burglary, and that Hibbler had possessed the gun that was the subject of the instant offense in connection with a crime of violence. The PSR therefore set Hibbler's total offense level at 34 under U.S.S.G. § 4B1.4(b)(3)(A). With a criminal history category of V, his guideline range was calculated to be 262-327 months in prison.

At the sentencing hearing, the government presented the testimony of a juvenile court investigator, several investigating officers, and the victim of the robbery that the officers believed Hibbler had committed on the morning he was arrested. The robbery victim testified that Hibbler had robbed her less than an hour before he was arrested; that he had used a gun; and that the day of the robbery she had reviewed a photo array and identified Hibbler as the robber, although she could not identify him in court at the sentencing hearing. After hearing the testimony, the district court refused to apply the U.S.S.G. § 4B1.4(b) enhancement, because the court determined that one of Hibbler's juvenile adjudications was a not a violent felony under the guidelines, and that Hibbler therefore did not qualify as an armed career criminal. The court overruled Hibbler's objections that

5

the four-level enhancement under 2K2.1(b)(5) should not apply because the jury had not found that he possessed the weapon that was the subject of his § 922(g) conviction in connection with the robbery; he had not admitted to using that gun in connection with the robbery; and the evidence was insufficient to support such a finding.

The district court concluded that Hibbler's total offense level was 28 and his criminal history category was V, which yielded a range of 130-162 months. However, having found that Hibbler was not an Armed Career Criminal under § 924(e), the court sentenced him to the statutory maximum sentence of 10 years in prison, *see* 18 U.S.C. § 924(a)(2), to be followed by three years of supervised release. Hibbler timely appealed.

## II. Sufficiency of the Evidence

When reviewing a conviction to determine whether it is supported by sufficient evidence, we view the evidence in the light most favorable to upholding the conviction and ask whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *United States v. Samuels*, 308 F.3d 662, 666 (6th Cir. 2002); *United States v. Blakeney*, 942 F.2d 1001, 1010 (6th Cir. 1991). In assessing the merits of such a challenge, we do not weigh the evidence, assess the credibility of the witnesses who testified, or substitute our judgment for the jury's. *United States v. Bartholomew*, 310 F.3d 912, 922 (6th Cir. 2002); *United States v. Welch*, 97 F.3d 142, 148 (6th Cir. 1996). However, there must be substantial evidence in the record to support the verdict reached; that is, "evidence affording a substantial basis of fact from which the fact in issue can be reasonably inferred." *United States v. Green*, 548 F.2d1261, 1266 (6th Cir. 1977).

In order to convict a defendant of a violation of § 922(g)(1), the government must prove (1) the defendant had been convicted of a crime punishable by imprisonment for a term exceeding one year; (2) the defendant knowingly possessed a firearm thereafter; and (3) the firearm possessed by the defendant traveled in or affected interstate commerce. *United States v. Daniel*, 134 F.3d 1259, 1263 (6th Cir. 1998). Hibbler challenges only the evidence used to support the finding that he possessed the weapon, arguing that Woolley's testimony that he saw Hibbler running down the street with the gun in his hands is contradicted by Blake's testimony that he recovered the gun from the waistband of Hibbler's pants. Hibbler further contends that Wooley's testimony is incredible because Hulley testified that there were no fingerprints found on the gun.

Even if the testimony were conflicting, it is not this court's place to weigh the credibility of the witnesses. But we see no conflict in the testimony. Woolley testified that he saw Hibbler running with the gun in his right hand; that he saw Hibbler – as he was running down the street directly in front of Woolley's patrol car – bring that hand back in front of his body; and that he saw the gun grip sticking out of the front of his pants as he cornered Hibbler with the patrol car in the alley. Moreover, Wooley testified that he saw Blake take the gun from Hibbler's waistband, and Blake testified that he had done so, which McMinn confirmed. Every officer who testified to seeing Hibbler on that day stated that he saw Hibbler with the gun. It matters not that Hibbler's stepfather testified that he did not see Hibbler with a gun that day. That one individual did not <u>see</u> Hibbler with a gun is not sufficient to establish that Hibbler did not <u>have</u> a gun, and the jury was free to believe the officers' testimony in any event. Finally, there is no requirement that fingerprints be present on a firearm in order to support a verdict that the defendant possessed it. *See United States*

7

*v. Wells*, 100 F. App'x 440, 445 (6th Cir. 2004) (gun); *United States v. Clark*, 56 F. App'x 217, 219 (6th Cir. 2003) (bags of cocaine).  The evidence was plainly sufficient to support the verdict.

### III.  Jury Challenge

Hibbler argues that the government's peremptory challenge of a black juror because of her youth violated her equal protection rights.  Specifically, he contends that (1) the explanation the government offered did not relate to the case, so it was insufficient to rebut the presumption of a race-based motivation; and (2) the government's use of peremptory challenges to excuse all jurors under age 24 resulted in the creation of a distinct group of excluded jurors, which differentiates this case from others that have found no equal protection violation for exclusion on the basis of age.  Hibbler raised a general challenge to the government's use of age as a factor in exercising its peremptory challenges, so we will review the issues relating to the use of a juror's age as a basis for exclusion de novo, as they are questions of law, and review the district court's determination that the government's exercise of peremptory challenges was not based on race for clear error, as it is a question of fact.  *See United States v. Mahan*, 190 F.3d 416, 423 (6th Cir. 1999).

Exercising peremptory challenges based on the race of prospective jurors violates those potential jurors' equal protection rights, and the party opposing the party exercising the challenges in that discriminatory way has standing to litigate those jurors' rights.  *See Batson v. Kentucky*, 476 U.S. 79, 89 (1986); *Powers v. Ohio*, 499 U.S. 400, 410-16 (1991).  Case law is clear that the United States is bound by the same standards as the States with regard to equal protection rights through the "equal protection component" of the Fifth Amendment's Due Process Clause.  *See United States v. Angel*, 355 F.3d 462, 471 (6th Cir. 2004); *Bolling v. Sharpe*, 347 U.S. 497, 499 (1954).

8

To raise a successful *Batson* challenge, a party must first make out a prima facie case of discrimination by showing (1) the dismissed juror is a member of a cognizable racial group; (2) there is evidence the party is using peremptory challenges to remove from the venire members of the removed juror's race; and (3) these facts and other relevant circumstances raise an inference that the party has used the practice to remove potential jurors on account of the jurors' race. *Batson*, 476 U.S. at 96; *Georgia v. McCollum*, 505 U.S. 42, 59 (1992). If the opponent of the peremptory challenge makes a prima facie showing, the other party must come forward with a neutral explanation for challenging the juror. *Batson*, 476 U.S. at 97. This explanation does not need to be persuasive or even plausible, so long as it is race-neutral. *United States v. Forrest*, 402 F.3d 678, 687 (6th Cir. 2005) (citing *McCurdy v. Montgomery County, Ohio*, 240 F.3d 512, 521 (6th Cir. 2001)). Once this burden of production is met, the opponent of the peremptory challenge must show that the proffered reason is a pretext for discrimination. *Id.* The burden of persuasion is at all times on the party opposing the use of the peremptory challenge. *Id.* The district court's findings that the proffered reason for the challenge is race-neutral and that the party opposing the strike has failed to show that the proffered reason is pretextual are factual findings that are based at least in part on credibility determinations, and we give those findings great deference. *Hernandez v. New York*, 500 U.S. 352, 364, 365 (1991).

## A. Age as a Legitimate Race-Neutral Reason

The district court did not determine whether Hibbler had made out a prima facie case, but proceeded directly to the question of whether Hibbler had shown that the government's race-neutral explanation for the peremptory challenge was pretextual. Whether Hibbler made out a prima facie case is therefore moot, *see Jackson*, 347 F.3d at 604 ("once a party offers a race-neutral explanation

9

for a peremptory challenge and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant [has] made a *prima facie* showing of intentional discrimination becomes moot"), but we note in passing that we believe that Hibbler would have been able to do so. With the dismissal of Harris and Holmes, the government had used all four of its peremptory challenges on black jurors, and only one black juror remained on the panel. This at least raises an inference of a racial motivation.

The government put its reasons for dismissing Harris and Holmes on the record, stating that it had reason to believe that Holmes might be biased against the Memphis Police Department and that it felt Harris was young and had little life experience. Hibbler's only response was that although neither the Supreme Court nor this court has held that age is an impermissible factor for purposes of a peremptory challenge – and therefore may not be the basis for a *Batson* challenge – age is not a legitimate race-neutral reason for peremptorily challenging a black juror.

It is clear that age, as a general matter, is not a prohibited reason for excluding a juror with a peremptory challenge. *See United States v. Maxwell*, 160 F.3d 1071, 1075 (6th Cir. 1998); *United States v. McCoy*, 848 F.2d 743, 745 (6th Cir. 1988). Moreover, age does not correlate with any particular race more closely than with other races, so as to act as a proxy for race. *See Purkett v. Elem*, 514 U.S. 765, 769 (1995) (per curiam). The district court's finding that Hibbler failed to rebut the government's proffered explanation in this regard was not erroneous.

## B. Proffered Reason Relating to the Case

Hibbler's second argument is based on language from *Batson*, stating that the party making the contested peremptory challenge "must articulate a neutral explanation *related to the particular case to be tried.*" *Batson*, 476 U.S. at 98 (emphasis added). Hibbler contends that this creates a

requirement that the party relate the proffered reason to the facts or circumstances of the particular case; specifically, he argues that the government had to show how Harris's youth and inexperience would impair her "ability to impartially weigh the evidence and render a verdict in *this case*." The Supreme Court expressly rejected this very argument in *Purkett*, stating that this language in *Batson* was meant only to "refute the notion that a prosecutor could satisfy his burden of production by merely denying that he had a discriminatory motive or by merely affirming his good faith." 514 U.S. at 769. This argument is meritless.

## C. Creation of a Distinct Group

Finally, Hibbler argues that even though the courts have uniformly held that parties are free to challenge jurors based solely on their age, one of the reasons for this holding is that a "young person" is not part of a "discrete and insular" group, which is required for protection under the Equal Protection Clause. *See McCleskey v. Kemp*, 481 U.S. 279, 352 (1987); *Castaneda v. Partida*, 430 U.S. 482, 494 (1977). As we noted in *Maxwell*, "young adults" do not "comprise a distinct group." 160 F.3d at 1075 (quoting *Ford v. Seabold*, 841 F.2d 677, 682 (6th Cir. 1988)) (internal quotation marks omitted). Hibbler argues here that by exercising a peremptory challenge to excuse a 23-year-old, but not exercising peremptory challenges to excuse two 24-year-olds, the government has created a distinct group comprising those 23 years old and younger. This, he claims, is different from a group consisting of all "young adults."

We need not address here the question of whether for purposes of an equal protection claim based on age a line can legitimately be drawn between young people who are 23 years old and young people who are 24 years old, because there is no evidence that in this case the government actually drew such a line or treated the two age groups differently. It was no more the government

11

than Hibbler that drew the line between 23-year-olds and 24-year-olds; it was Hibbler, after all, who exercised peremptory challenges to exclude Hall and Ray, the two 24-year-olds. Moreover, because there was only one juror in the venire within the 23-year-old and younger group, there could be no showing that the government followed a pattern of selecting jurors within the allegedly protected group for peremptory challenges, which would raise an inference of differing treatment. *See Batson*, 476 U.S. at 96-97.

Finally, the government did not rely solely on Harris's age in excusing her, but also relied on her lack of employment and life experience in general, and government counsel stated on the record that she would have challenged one of the 24-year-old jurors on similar grounds had counsel had enough peremptory challenges remaining. There is simply no evidence that the government purposely treated the 23-year-old juror differently from the 24-year-old jurors based on the one-year difference in their respective ages. *See Bennett v. City of Eastpointe*, 410 F.3d 810, 818 (6th Cir. 2005); *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979) (disparate impact on a group is not sufficient; where disparate impact is shown, the party must show that the government singled the group out for differing treatment because of, rather than in spite of, the disparate impact). Hibbler has not shown any error in the district court's ruling.

## D.  Conclusion

The Supreme Court has made clear that "the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." *Purkett*, 514 U.S. at 768. The district court had before it at the time it made its decision only the government's proffered race-neutral reasons for striking Harris and Holmes, and nothing from Hibbler to show that the reasons

12

given were a pretext or that the real reason was racially motivated. Because it was Hibbler's duty to do so as the "opponent of the strike," the district court did not err in its determinations.

## IV. Sentencing

Hibbler's guideline range was 130-162 months in prison, but 18 U.S.C. § 924(a) provided a 120-month maximum sentence. Neither party has claimed that the guideline range was incorrectly calculated or the statutory cap incorrectly applied. Hibbler argues, however, that the district court treated the sentencing guidelines as mandatory and enhanced his sentence by finding by a preponderance of the evidence that he possessed the firearm in connection with a robbery, which violated his Sixth Amendment rights. Hibbler made a general objection to the use of the sentencing guidelines in the district court, which the district court overruled, citing our decision in *United States v. Koch*, 383 F.3d 436 (6th Cir. 2004).

In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court determined that, where the defendant is sentenced under a mandatory guidelines regime and the district court finds facts by a preponderance of the evidence that increase his sentence beyond the statutory maximum, the defendant's Sixth Amendment rights are violated. The district court imposed a four-point increase in Hibbler's offense level pursuant to U.S.S.G. § 2K2.1(b)(5), finding that he possessed a firearm in connection with another felony offense, specifically, the robbery. Because Hibbler did not object on Sixth Amendment grounds, however, we review for plain error, and imposing the sentence here automatically meets the plain error standard. *United States v. Oliver*, 397 F.3d 369, 378-80 (6th Cir. 2005). We will therefore remand the case to the district court for re-sentencing.

## V. Conclusion

13

For the foregoing reasons, we **AFFIRM** Hibbler's conviction and **REMAND** the case to the district court for re-sentencing.